Affirmed and Memorandum Opinion filed January 30, 2003









Affirmed and Memorandum Opinion filed January 30,
2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS.
14-01-01155-CR &

     
14-01-01156-CR

____________

 

JACQUELINO BUSTAMANTE BAHENA,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 184th District Court

Harris County, Texas

Trial
Court Cause Nos. 804,433 and 804,432

 



 

M E M O R A N D U M   O P I N I O N

Appealing
his convictions on two charges of aggravated sexual assault of a child,
appellant Jacquelino Bustamante
Bahena claims the trial court erred in failing to
exclude his oral confession and by refusing to allow him to reopen the
evidence.  We affirm.

I.  Factual and
Procedural Background








In
this consolidated appeal, appellant challenges two convictions for aggravated
sexual assault of a child.  In cause
number 804,433 appellant was charged by indictment with aggravated sexual
assault of the complainant, a female child, in July of 1996.  In cause number 804,432 appellant was charged
by indictment with aggravated sexual assault of the same child in August of
1998. 

Appellant
moved to the United States in 1985 with the complainant, her mother, and her
older sister.  The complainant was one
year old at the time, and the four lived together until 1990, when appellant
moved out of the home.  However, between
1990 and 1997, appellant would stay with the complainant=s
mother from time to time, but not on a regular basis.  Appellant fathered two sons with the
complainant=s mother in that time period. 
In 1997 or 1998, appellant moved in with his wife, Isidra
Bahena, to whom he has been married for twenty-eight
years.  When appellant was not living
with the complainant=s mother, the complainant would accompany her two half-brothers
on their overnight visits to appellant=s apartment.

At
trial the complainant testified in detail to a series of sexual assaults
perpetrated by appellant that began when she was ten years old and included the
assaults alleged in the indictments.  The
complainant began to Afeel dirty@ about her sexual abuse after receiving sex-education lessons
in school, prompting her to report the abuse to a school counselor in November
of 1998.  The counselor immediately
called Children=s Protective Services. 
Detective Tim Brinson of the Pasadena Police Department was assigned to
the case.  

After
investigating the case, Detective Brinson referred the case to the Harris
County District Attorney=s Office, and police officers arrested appellant.  At trial, appellant testified in his own
defense and denied that the sexual assaults took place.  The State called Detective Brinson to impeach
appellant=s testimony.  Detective
Brinson testified that appellant waived his Miranda rights and orally
admitted to the sexual assaults, although appellant refused to sign a written
statement.  








After
Detective Brinson had testified and after both sides had rested, but before the
charge was read to the jury, appellant moved the trial court to reopen the
evidence in order to elicit further testimony from Detective Brinson.  Appellant sought, among other things, to
question Detective Brinson about a prior trial which had ended in a mistrial
because of a hung jury.  Detective
Brinson was not present at the time, and the trial court denied appellant=s
request to reopen the case for presentation of additional evidence.  The jury found appellant guilty and assessed
punishment for each offense at twelve years= confinement in the Institutional Division of the Texas
Department of Criminal Justice.

II. 
Issues Presented

Appellant
asserts the following issues for review:

(1)
Did the trial court abuse its discretion by allowing appellant=s
oral confession to be used against him for impeachment?

(2)
Did the trial court err by denying appellant=s
motion to reopen the evidence?

 

III.  Analysis and Discussion

 

A. 
Did the trial court abuse its discretion by allowing appellant=s
oral confession to be used against him for impeachment?

 








In
his first issue, appellant asserts that his oral confession to Detective
Brinson was involuntary and thus could not be used to impeach his trial
testimony.  An oral statement of an
accused made during custodial interrogation is generally inadmissible against
the accused unless the statement was electronically recorded.  See Tex.
Code Crim. Proc. Ann. art.
38.22, '
3(a)(1) (Vernon 2001). 
However, an accused=s unrecorded statement may be used to impeach his credibility
as a witness if the statement was voluntarily made.  Id. art. 38.22, ' 5.  Voluntariness is a
factual determination that must be based on the totality of the circumstances
surrounding the statement, and the trial court, as finder of fact, is the
exclusive judge of the credibility of the witnesses and the weight to be
afforded their testimony.  Wyatt v. State, 23 S.W.3d
18, 23 (Tex. Crim. App. 2000).  We
review a trial court=s determination of the voluntariness
of a confession for an abuse of discretion. 
Id.  In
determining whether there has been an abuse of discretion, we must decide
whether the trial court acted without reference to any guiding rules and
principles, or, in other words, whether the court acted arbitrarily or unreasonably.  Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim.
App. 1993).

Appellant
alleges that his confession was involuntary for two reasons: (1) appellant
spoke broken English which allegedly made it impossible for him to knowingly
and voluntarily waive his Miranda rights; and (2) Detective Brinson
allegedly pressured appellant to waive his rights and confess.  As required by section 6 of article 38.22 of
the Texas Code of Criminal Procedure, the trial court conducted a hearing
outside the presence of the jury to determine the voluntariness
of appellant=s confession.  See
Tex. Code Crim. Proc.
Ann. art. 38.22, ' 6.  With regard to appellant=s alleged inability to
understand English, Detective Brinson testified that he read appellant his Miranda
rights in English, and after reading each right, he asked appellant to initial
it if he understood it.  Brinson further
testified that he conversed with appellant entirely in English, appellant
appeared to fully understand English, and appellant never requested a
translator or otherwise indicated that he did not comprehend the statements. 

The State also
established appellant=s
ability to understand English through its cross-examination of appellant.  Appellant testified, through an interpreter
at trial, as follows: (1) he speaks English; (2) he understood his rights when
Detective Brinson read them to him; (3) he initialed each right to indicate his
understanding; and (4) he agreed to waive his rights and speak with Detective
Brinson.  Appellant=s signed and initialed
waiver of his Miranda rights was admitted after it was authenticated
through appellant=s
testimony.  When asked on cross-examination whether he voluntarily signed
the waiver of his Miranda rights, appellant answered, Ayes.@  However, during subsequent cross-examination
appellant changed his answers, first saying he signed with mental reservations,
then saying Detective Brinson forced him to sign.  Appellant also submitted two supporting
affidavits to the trial court that were written in English.  Appellant testified that he signed and
understood both affidavits. 








As
to appellant=s claim that Detective Brinson pressured him to waive his
rights, appellant=s testimony and Detective Brinson=s testimony both established the same initial sequence of
events: (1) appellant signed the waiver of his Miranda rights; (2)
Brinson asked him whether complainant=s sexual-assault allegations were true; (3) appellant answered;
and (4) Detective Brinson asked appellant to sign a written statement which
Detective Brinson had drafted while they were speaking.  In addition, appellant testified he told Detective
Brinson the allegations were false and then refused to sign the paper because
he felt like he would rather die than sign a false statement.  Appellant stated that Detective Brinson was
angry and that appellant thought Detective Brinson would kill him.  Appellant further testified that after he
refused to sign the statement, Detective Brinson told him (1) he would have
fewer problems if he signed; (2) he would remain in jail forever if he did not
sign; and (3) appellant would be forced to sign the statement at trial.  Assuming, arguendo,
that Detective Brinson made these remarks when he asked appellant to sign the
written statement, we do not see how they affected the voluntariness
of appellant=s previous waiver of his Miranda rights or the voluntariness of appellant=s prior oral statement. 
In any event, 
Detective Brinson=s testimony controverted appellant=s
testimony.  

Detective
Brinson testified that, when he asked appellant about the sexual-assault
allegations, appellant admitted the offenses. 
According to Detective Brinson, he then asked appellant to sign a
written confession, but appellant said he would not sign anything, so Detective
Brinson returned appellant to his jail cell. 
Finally, Detective Brinson denied that he told appellant he would have
fewer problems if he signed and denied that he did anything that could have
been construed as coercive or intimidating. 
During Detective Brinson=s interview, appellant was not handcuffed, and he did not ask
for a lawyer.  Further, appellant did not
ask to use the restroom or request food, water, or anything else during the
interview.  In order to show appellant=s
familiarity with the criminal-justice system, the State also established that
appellant had been arrested in 1997, charged with assault, and pleaded guilty.








The
discrepancies between appellant=s testimony and Detective Brinson=s testimony created a question of fact which the trial court,
acting as finder of fact, resolved against appellant.  See Aranda v.
State, 736 S.W.2d 702, 706B07 (Tex.
Crim. App.
1987).  We find no abuse of discretion in
the trial court=s admission of appellant=s confession for impeachment purposes because Detective Brinson=s
testimony supported the court=s finding that, based on the totality of the circumstances,
appellant knowingly, voluntarily, and intentionally waived his rights when he
confessed to Detective Brinson.  See
Wyatt, 23 S.W.3d at 23B25.  Accordingly, we
overrule appellant=s first issue. 

B.  Did the trial court err by denying appellant=s
motion to reopen the evidence?  

Appellant
asserts in his second issue that the trial court erred in denying his motion to
reopen the evidence for the admission of further testimony from Detective
Brinson.  We review the trial court=s
decision for an abuse of discretion.  See
Wilkinson v. State, 423 S.W.2d
311, 313 (Tex. Crim. App.
1968).  The Code of Criminal Procedure
provides that the trial court Ashall allow testimony to be introduced at any time before the
argument of a cause is concluded, if it appears that it is necessary to a due
administration of justice.@  Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 2001).  Under this article it is reversible error to
refuse to reopen the evidence for the receipt of admissible evidence that is
offered before the jury charge is read, unless it appears introduction of the
evidence would have impeded the trial or interfered with the due and orderly
administration of justice.  Tucker v.
State, 578 S.W.2d 409, 410 (Tex. Crim. App.
1979).  Whether the trial court abused
its discretion depends on the facts of each case.  Love v. State, 861 S.W.2d
899, 903 (Tex. Crim. App.
1993).  








Appellant
moved to reopen the evidence the day after Detective Brinson testified and
after both sides had rested, but before the trial court charged the jury.  Appellant wanted to make the following
inquiries of Detective Brinson in an attempt to show bias: (1) whether
Detective Brinson knew the first trial had ended in a mistrial; (2) whether
Detective Brinson knew about the oral confession before or during the first
trial; (3) whether Detective Brinson told the prosecutor about the confession
before or during the first trial; (4) when Detective Brinson first told any
prosecutor about the oral confession; and (5) whether it was true that
Detective Brinson had not told any prosecutor about this confession until after
the first trial. 

When
appellant moved to reopen the evidence, Detective Brinson was not present.  The trial court denied the motion, stating
that any mention of the prior trial and its outcome would have been
inadmissible because the danger of unfair prejudice substantially outweighed
the probative value of the evidence. 
With regard to the four questions that pertained to the previous trial,
we hold that it was within the trial court=s discretion to refuse to reopen the evidence because these
questions would have elicited inadmissible evidence.  See Tucker, 578 S.W.2d at 410 (holding that it was
not error to refuse to reopen the evidence for the admission of evidence that
was immaterial and therefore inadmissible).  

We
now consider the trial court=s refusal to reopen the evidence so that appellant could ask
Detective Brinson when he first told a prosecutor about appellant=s
oral confession.  In determining whether
the evidence should have been reopened, we do not consider appellant=s
opportunity to secure the evidence earlier in the trial through
cross-examination of Brinson because that information is not relevant; rather,
the important timing consideration is whether the evidence was available at the
time appellant moved to reopen the evidence. 
See Vital v. State, 523 S.W.2d 662, 664 (Tex. Crim. App. 1975).

The
Court of Criminal Appeals addressed similar circumstances in Wilkinson,
a case in which defense counsel moved to reopen the evidence after both sides
had rested so that the defendant=s mother could be called to impeach a psychiatrist=s
testimony on the defendant=s insanity.  See
Wilkinson, 423 S.W.2d
at 313.  The Wilkinson
court upheld the trial judge=s refusal to reopen the evidence because reopening would have
resulted in an Aindefinite delay@ as the court had already excused the psychiatrist and he was
not then available in court to testify.  Id.  








In
Rogers v. State, the Court of Criminal Appeals affirmed a trial court=s
decision to allow the state to reopen the evidence during the punishment phase
of trial to elicit psychiatric testimony on the defendant=s
propensity to commit future criminal acts, even though
a recess was required to recall the psychiatrist.  774 S.W.2d 247, 262B63
(Tex. Crim.
App. 1989).  Finding the
facts distinguishable from those presented in Wilkinson, the Rogers
court noted the absence of the Aindefinite delay@ found in Wilkinson.  The
Rogers court pointed out that the appellate record in Rogers did
not indicate Athat any significant delay resulted@
from granting the motion to reopen and that the evidence, Aalthough
of slight probative value,@ was relevant to a material issue in the case.  Id. at 263.  

In
the present case, as in Wilkinson, appellant moved to reopen the
evidence for impeachment purposes only. 
Granting the motion would have indefinitely delayed trial because the
witness, Detective Brinson, was not present when the motion was made.  Defense counsel did not give the trial court
any indication of how quickly he could secure Detective Brinson=s
testimony, even after the State noted Detective Brinson=s
absence on the record.  See Love,
861 S.W.2d at 904 (holding appellant=s statements on the record that witness would be available
shortly and that further cross-examination would only take fifteen minutes,
along with appellant=s actually securing witness=s presence in the courtroom within the hour, were sufficient to
show lack of undue delay).  The appellate
record does not show how long the trial would have been delayed if the court
had granted appellant=s motion to reopen. 
Under these circumstances, the trial court was not required to delay the
trial indefinitely or impede its progress by granting appellant=s
motion to reopen the evidence.  See
Wilkinson, 423 S.W.2d
at 313.

Even
if the trial court abused its discretion in denying appellant=s
motion to reopen, the error would be harmless. 
A trial court=s erroneous refusal to reopen evidence is subject to a nonconstitutional harm analysis.  See Cain v. State, 947 S.W.2d
262, 264 (Tex. Crim. App. 1997); Forbes
v. State, 976 S.W.2d 749, 752 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  A
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s verdict.  King v. State, 953 S.W.2d
266, 271 (Tex. Crim.
App. 1997).  Based on our
review of the record, we conclude the trial court=s refusal to reopen the evidence did not affect a substantial
right of appellant.  See Tex. R. App. P. 44.2(b); Forbes, 976 S.W.2d at 752B53.








Appellant
asserts that Detective Brinson=s testimony made such an impression on the jury that the jury
asked to have appellant=s testimony reread during jury deliberations in the
guilt-innocence phase of trial.  The jury
was instructed to consider appellant=s confession only if jury members believed beyond a reasonable
doubt that it was voluntary.  The jury=s
request is consistent with discharging this duty, and it does not show that
Detective Brinson=s answer to a single question (i.e., when he first told
a prosecutor about the confession) would have had a substantial influence on
the jury in determining its verdict. 
Because the record does not indicate that a substantial right was
affected, any error in denying appellant=s motion to reopen was harmless.  See Tex.
R. App. P. 44.2(b); Forbes,
976 S.W.2d at 752B53.  Accordingly, we overrule appellant=s
second issue. 

                                                           IV.  Conclusion

The State
introduced evidence that controverted appellant=s
claims that he did not understand English and that he was pressured into making
a statement to Detective Brinson.  The
trial court did not abuse its discretion in finding appellant=s
statement voluntary and therefore admissible to impeach appellant=s
credibility as a witness.  The trial
court did not abuse its discretion by denying appellant=s
motion to reopen the evidence because appellant sought to elicit inadmissible
testimony about a prior mistrial and because the record did not reflect that
further testimony from Detective Brinson would not have impeded or delayed the
progress of the trial.  Having overruled
all of appellant=s issues, we affirm the trial court=s
judgment.  

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed January 30, 2003.

Panel
consists of Justices Yates, Anderson, and Frost.

Do
Not Publish C Tex. R. App. P. 47.2(b).