**William E. WYATT, Jr., Appellant,**

v.

**The STATE of Texas.**

**No. 73101.**

Court of Criminal Appeals of Texas.

May 3, 2000.

Rehearing Denied June 14, 2000.

---

**26.** See Footnote 20.

Don Cooksey, Texarkana, for appellant.

Michael Shepherd, Asst. Dist. Atty., Texarkana, for the State.

## *O P I N I O N*

HOLLAND, J., delivered the unanimous opinion of the Court.

Appellant was convicted in February 1998 of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(8). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. *See* Article 37.071 § 2(g).[1] Direct appeal to this Court is automatic. *See* Article 37.071 § 2(h). Initially, we sustained a portion of appellant's third point of error, abated the

---

1. Unless otherwise indicated all future references to Articles refer to Code of Criminal Procedure.

appeal, and remanded the cause to the trial court so that it could enter its findings of fact and conclusions of law regarding appellant's confession. *See* Article 38.22, § 6; *Green v. State*, 906 S.W.2d 937 (Tex.Crim.App.1995). We now address appellant's remaining points of error.

In his first two points of error, appellant alleges that the trial court erred in failing to suppress his confessions due to the location in which they were taken. In point of error one, appellant claims that the confessions were obtained after he was illegally arrested, interrogated, and detained in the State of Arkansas in violation of the due process and equal protection clauses of the United States Constitution. He specifically argues that the arrest was illegal because the Texas police officer was outside the jurisdictional limits of his authority. In his second point of error, appellant asserts that his confessions should have been suppressed because subchapter B of

Chapter 361 is unconstitutional in that it attempts to change Texas's boundaries, *see* U.S. Const. art. I, § 10, cl. 3,[2] and violates the Interstate Agreement on Detainers Act. *See* Art. 51.14. Appellant also argues that he was denied effective assistance of counsel because a Texas attorney could not represent him in Arkansas. The record shows that appellant was arrested inside the Bi–State Criminal Justice Center in Texarkana. The Center sits directly on the Arkansas/Texas state lines. The State concedes that appellant gave his statements and was arrested in a portion of the building that is on the Arkansas side of the state line.

Subchapter B of Chapter 361 of the Texas Local Government Code allows for and governs Justice Centers located on the state line. Section 361.029 governs arrests, prosecution, extradition, and service of process at the Bi–State Justice Center.[3]

---

2. Article I, clause 3 states:
No State shall, without consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign power, or engage in War, unless actually invaded, or in such imminent danger as will not admit of delay.
U.S. Const. art. I, § 10, cl. 3.

3. Section 361.029 states in pertinent part:
(a) A person who is in the justice center in the custody, under the law of this state, of a peace officer or center personnel:
(1) is constructively present in this state while the person is in custody in the part of the center located in the other state;
(2) may be prosecuted for an offense against the law of this state without extradition; and
(3) may be personally served with process in any part of the center for a proceeding in this state.
* * * *
(d) Justice center personnel or a peace officer of either state may transfer across the state line in the center a person who is in custody in the center under the law of either state and may exercise control over the person on both sides of the state line.
(e) A person who is present in the justice center but who has not been confined in the center, taken to the center under arrest, or summoned to appear in the center, may be

arrested without extradition in any part of the center for an offense against the law of either state. Extradition of a person arrested in the justice center under those circumstances is not required for prosecution of the person if the person is actually present in any part of the center or in the state of the prosecution at the time of the prosecution.
(f) A person who is summoned to appear in the justice center under the law of this state:
(1) is constructively present in this state while that person is appearing under the summons in the part of the center located in the other state;
(2) may be arrested in any part of the center for an offense committed against the law of this state and prosecuted for that offense without extradition if the person is actually present in any part of the center or in this state at the time of the prosecution; and
(3) may be personally served with process in any part of the center for a proceeding in this state.
* * * *
(j) A peace officer of this state may:
(1) arrest a person under the law of this state in the part of the justice center located in the other state for an offense against the law of this state if that peace officer is authorized to make that arrest in the part of the center located in this state; and

The record in the instant case shows that appellant voluntarily agreed to go to the Justice Center on February 4, 1997, for questioning. Appellant was taken to the Criminal Investigation Division on the third floor where he was read his *Miranda*[4] warnings and agreed to give a voluntary statement. After completing this statement, appellant consented to having a sexual assault kit performed on him at Wadley Hospital. He was then brought back to the Justice Center where his *Miranda* warnings were again administered before further questioning. At the conclusion of questioning that evening, appellant was placed under arrest and held at the Justice Center.

■ Although we note that the evidence shows that the Justice Center sallyport and the Criminal Investigation Division are both located in the part of the building on the Arkansas side of the state line, sections 361.029(e) and (j) clearly gave the officer in question jurisdiction to arrest appellant inside the Bi–State Criminal Justice Center without extradition. The language of the statute does not attempt to alter the state borders.

■ Further, we find it unnecessary to reach the constitutionality issue. Appellant voluntarily went to the center and voluntarily gave his statements to the Texas police officers. *See* point of error three, *infra*. Appellant does not challenge that his arrest was properly made with probable cause and without force. Appellant did not request counsel; therefore, because he had none, counsel could not be ineffective. Further, appellant concedes that the purpose of the Interstate Agreement on De-

tainers Act is to provide safeguards to fugitives from justice. Because appellant was not a fugitive, the Act did not apply in the instant case. **Points of error one and two are overruled.**

■ In his third point of error, appellant posits that the trial court erred in admitting his February 5 and 6, 1997, confessions because they were not freely and voluntarily given. *See* Articles 38.21 and 38.22 § 2(b).[5] Appellant claims that the interrogating officers yelled at him, called him a "liar," and "talked short" to him. He contends that this behavior made him feel threatened, scared, and intimidated. Appellant also asserts that his requests for counsel went unanswered.

■ "At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight of their testimony." *Penry v. State*, 903 S.W.2d 715, 744 (Tex.Crim.App.1995); *see also Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Therefore, we will not disturb the trial court's findings if those findings are supported by the record. *See Penry*, 903 S.W.2d at 744. Instead, "[w]e only consider whether the trial court properly applied the law to the facts." *Id.*

■ The statement of an accused may be used in evidence against him if it appears that it was freely and voluntarily made without compulsion or persuasion. *See* Article 38.21. "The determination of whether a confession is voluntary is based on an examination of the totality of circumstances surrounding its acquisition." *Penry*, 903 S.W.2d at 744.

---

(2) arrest a person under the law of the other state if a peace officer of the other state is authorized to make that arrest in the part of the center located in the other state.

TEX. LOC. GOV'T CODE ANN. § 361.029.

4. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Appellant also alleges that the confessions were inadmissible because he "was not taken

before a magistrate." However, appellant points us to nothing in the record, makes no argument, and cites no authority to support this proposition. We will not make appellant's arguments for him and hold the allegation to be inadequately briefed. *See* TEX. R. APP. PROC. 38.1(h).

Appellant also gave a confession on February 4, 1997, but appellant concedes that it was voluntary and was not used during trial.

The following information was elicited at the suppression hearing: Upon request on February 4, 1997, appellant voluntarily went to the Bi–State Justice Center to give a statement to police. Texarkana Police Officer Larry Parker read appellant his warnings pursuant to *Miranda* and Article 38.22. Appellant also signed warning forms acknowledging that he had received and understood those rights. During the statement, Parker received information from the hospital that the child victim had been sexually assaulted, but finished taking the statement already in progress.[6] Parker then asked appellant if he would agree to have a "sexual assault kit" taken. Appellant voluntarily complied, and Parker accompanied him to the hospital. After the kit had been completed and appellant had returned to the Justice Center, Parker again read appellant his rights and then placed him under arrest.

Around 9:00 a.m. on February 5, Parker interviewed appellant once more. Parker read appellant his warnings, and appellant again signed an acknowledgment form. Appellant did not request an attorney nor did he ask for the interview to cease at any time, and Parker stated that the interview would have ceased immediately had appellant requested either. The written statement appellant gave included a recitation of appellant's rights and an acknowledgment that he knowingly and voluntarily waived those rights. Additionally, appellant was allowed to review the statement and make any changes to the statement that he felt were necessary. Appellant initialed all changes that were made.

Parker testified that although he was upset by the death of a small child, he did not yell at, coerce, threaten, or promise appellant anything at any time. Parker did not deny that he "talked short" with appellant or that he told appellant that he thought appellant was a liar. But Parker also testified that he did not do so until *after* appellant had completed his statement. Parker further testified that he requested that another officer take appellant's statement on February 6 because of Parker's feelings about the case.

Texarkana Officer Ronnie Sharp took appellant's February 6 statement. Sharp advised appellant of his rights, and appellant voluntarily signed an acknowledgment form. Appellant did not request an attorney nor did he ask to stop the interview at any time. Sharp stated that the interview would have stopped had appellant requested either. Sharp also testified that he felt appellant was aware of his rights and understood them. As with the previous day, the written statement included a recitation of appellant's rights at the top and included an acknowledgment that appellant knowingly, intelligently, and voluntarily waived those rights. Appellant reviewed the statement and made changes to the statement that he felt were necessary. Appellant initialed all changes made. Sharp further testified that he did not raise his voice or curse at appellant; he felt that appellant was very cooperative during the entire process and did not appear to be scared.

Appellant, a high-school graduate and former local jailor, testified that, although he voluntarily made a statement on February 4, he did not voluntarily make any other statements. He claimed that he did not voluntarily sign the waiver forms on February 5 or 6, and he also asserted that the officers made up the statements. He stated that he signed one statement because he was scared, but then he later stated that he signed it because the officer told him that it was the same statement that he had made on February 4. Appellant further testified that the officers yelled at him, cursed him, threatened him, and intimidated him into signing the statements. He asserted that his requests for

---

**6.** This first confession was made before appellant learned that the child victim had died from his injuries and began before the authorities learned that the child had not drowned, but had been sexually assaulted and asphyxiated.

a lawyer went unanswered, and he also stated that he did not read the statements before signing them and did not make any corrections because he did not have his glasses with him. Appellant did, however, admit that he could see well enough to sign the forms and statements on the lines provided. He also conceded that all the initialing and signatures were, in fact, his handwriting.

As the trial court is the sole judge of the credibility of the witnesses and the weight of their testimony, we conclude the trial court's findings and conclusions are supported by the record. *See Penry*, 903 S.W.2d at 744. The trial court noted that appellant's testimony vacillated as to why he signed the statements, and we note that appellant never claimed that he did not understand his rights. Viewing the totality of the circumstances, the trial court did not err in holding that appellant's confessions were free and voluntary. *See id.* **Point of error three is overruled.**

■ In his fourth point of error, appellant asserts that the trial court erred by admitting evidence of the sexual assault that accompanied the instant murder of a three-year-old child because appellant was tried only for capital murder of a child under six years of age and not for the sexual assault itself. Specifically, appellant complains that the trial court: (1) did not redact the portion of his confession in which he states that he sexually assaulted the child before smothering him, and (2) did not redact the portion of the autopsy report that stated "the decedent was sodomized and smothered with a plastic bag." Appellant contends that the sexual assault was an extraneous offense and that the evidence was more prejudicial than probative.[7]

■ Texas Rule of Criminal Evidence 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.[8] But the "other crime, wrong, or act" may have relevance "apart from character conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident." *Montgomery v. State*, 810 S.W.2d 372, 388–89 (Tex.Crim.App.1990) (op. on reh'g). Additionally, same transaction contextual evidence may be admissible where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, ..., of any one of them cannot be given without showing the others." *Rogers v. State*, 853 S.W.2d 29, 33 (Tex.Crim.App.1993). In fact, this Court has held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim. App.1986).

■ Under Rule 404(b), however, same transaction contextual evidence is admissible "only to the extent that it is necessary to the jury's understanding of the offense." *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex.Crim.App.1996) (quoting *England v. State*, 887 S.W.2d 902, 915 (Tex.Crim.App. 1994)). It is admissible "only when the offense would make little or no sense without also bringing in the same transaction evidence." *Id.*

We conclude that the trial court did not err. The evidence of the sexual assault

---

7. Appellant also makes a statement that the autopsy report is hearsay, however, he makes no argument regarding this allegation. We will not make appellant's arguments for him and hold the allegation to be inadequately briefed. *See* Tex. R. App. Proc. 38.1(h).

8. At the time of the instant trial, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence had not yet been combined into a single set of rules.

was so intertwined with the murder that the jury's understanding of the offense would have been obscured without it. Appellant confessed to smothering the child to death with a plastic bag shortly after sexually penetrating the child's anus. Appellant then called "9–1–1" and claimed that the child had drowned in the bathtub. Other evidence showed that when the child was taken to the hospital, medical personnel noticed that sexual abuse had taken place and determined that the child had not drowned, alerting the hospital staff and the authorities that foul play had taken place.

■ Further, admission of the sexual assault evidence tended to establish some evidentiary fact, such as motive, opportunity or preparation. *See Montgomery,* 810 S.W.2d at 388–89. In the instant case, the State's theory was to prove that the murder of the three-year-old child was intentional by showing that the sexual assault was the motive for the murder.

■ Appellant also objected that the sexual assault evidence was more prejudicial than probative. Again, we must disagree. A Rule 403 balancing test includes the following factors:

(1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

(2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;"

(3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence avail-

able to him to help establish this fact, and is this fact related to an issue in dispute.

*See Montgomery,* 810 S.W.2d at 389–90. This Court will reverse only upon a clear abuse of discretion. *See Ransom v. State,* 920 S.W.2d 288, 299 (Tex.Crim.App.1996); *see also Montgomery,* 810 S.W.2d at 390 (stating that "[s]o long as the trial court ... operates within the boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be.").

First, we note that the evidence presented by the prosecution to show appellant in fact committed the offense of sexual assault was strong: appellant confessed to the sexual assault of the victim, and the medical evidence supported appellant's statement. Additionally, appellant does not dispute this fact on appeal. On the other hand, we note the repulsion and horror of the general public toward offenses of this nature which could potentially affect the jury in an emotional way. Also, a significant amount of time was devoted to this subject at trial. This evidence, however, was important to the prosecutor's contention that appellant intentionally committed the murder on the day of the sexual assault.

Any evidence presented by the State is generally prejudicial to the defendant; however, because the two crimes here were so intertwined, the evidence of one was necessarily probative of the other. In light of these facts, we hold that the trial judge did not abuse his discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of this evidence. *See Montgomery,* 810 S.W.2d at 387. **Point of error four is overruled.**

■ In appellant's fifth point of error, he alleges that the trial court violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not requiring the State to produce an exculpatory statement by the deceased's mother until after she had been called as a witness. Appellant

maintains he was harmed because he could not use this statement to cross-examine her.

The U.S. Supreme Court has held that the prosecution violates due process when it suppresses evidence in its possession favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. 1194. Impeachment evidence, as well as exculpatory evidence, is included within the scope of the *Brady* rule. *See U.S. v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence withheld by a prosecutor is "material" if there is "a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.* Thus, a due process violation has occurred if a prosecutor: (1) fails to disclose evidence, (2) favorable to the accused, (3) which creates a probability of a different outcome. *See Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App.1992).

The information about which appellant complains was never in the possession of the State, but was in an investigator's file in the pathologist's office. The investigator's report, which was made prior to the pathologist's receipt of the victim's body, stated that the "next of kin denies boyfriend ever hurt deceased or would sexually assault him."

Even if we assume, *arguendo*, that this was evidence the State was required to turn over under *Brady* as favorable to the accused, appellant still cannot show the outcome of the proceedings would have been different had the statement been disclosed. During trial, the victim's mother testified on direct examination that, prior to the instant crime, she trusted appellant and did not believe appellant would have hurt her child. This information is materially the same as that contained in the pathologist's report. The defense was able to cross-examine the victim's mother with the knowledge that she previously trusted appellant with the care of her child. Therefore, we conclude that there is no reasonable probability that, had the complained-of evidence been disclosed to the defense, the outcome of the proceeding would have been different. *See id.* **Point of error five is overruled.**

In point of error six, appellant contends that the trial court erred in allowing State's witness Sann Thompson to testify as an expert regarding sexual offenders. Specifically, he complains that she was not an expert because she was not "licensed," she did not interview appellant, and she did not directly classify appellant as a sexual deviant.

The record shows that, during the punishment phase, two psychiatric experts testified that appellant was a psychopathic manipulator and that psychopathic manipulators include sex offenders. The State then offered Thompson's testimony, not to elicit any opinions about appellant specifically, but to enlighten the jury as to the general characteristics of sex offenders, their high recidivism rate, and the lack of successful treatments.

"The special knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things." *Penry*, 903 S.W.2d at 762; *see also* TEX. R. CRIM. EVID. 702; *Holloway v. State*, 613 S.W.2d 497, 501 (Tex.Crim.App.1981). The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *See Penry*, 903 S.W.2d at 762. "The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question." *Id.*

Appellant objected that Thompson had not been qualified as an expert in the area of sexual offenders. The State, however, asked various questions regarding Thompson's experience and training in the areas of sexual offenders and sexual deviation. In response to these questions, Thompson testified that she had worked in the field for nineteen years and held a Bachelor's Degree with a double major in Psychology and Sociology with twenty-four hours towards her Master's as a Psychological Associate. She was employed with the Texas Department of Human Services for eight years where she received extensive training in working with sex offenders' families and sexual abuse. Thompson received training from experts recognized in the field of sexual deviancy and also from the F.B.I. She annually completes forty hours of training on sexual deviancy and provides training for students seeking certification in the area of sex offenders. Further, Thompson is a member of the National Treatment for Sexual Abusers and currently works with sex offenders as a community supervision officer for the court system.

Therefore, we hold that the trial court did not abuse its discretion in allowing Thompson to testify as an expert regarding the characteristics of sex offenders and their high recidivism rate. The testimony clarified previous testimony from the State's medical experts and demonstrated the increased probability that this type of individual would be a future danger. **Point of error six is overruled.**

■ In his seventh point of error, appellant maintains that the trial court erred by allowing the State "to continually and repeatedly lead the State's witnesses" over the objection of defense counsel. *See* Tex. R. Crim. Evid. 610(c).[9] Further, he complains that the trial court did not admonish the State until a motion was filed, causing him to be prejudiced and irreparably harmed.

■ Texas Rule of Criminal Evidence 610(c) does not forbid the asking of leading questions; it states that leading questions "should not be used on the direct examination of a witness *except as may be necessary to develop his testimony*." Tex. R. Crim. Evid. 610(c) (emphasis added). The rule clearly contemplates that some leading questions are acceptable at the trial court's discretion. Prior to the adoption of rule 610(c), this Court held in a long line of cases that permitting leading questions on direct examination is a matter within the sound discretion of the trial court. Abuse of discretion cannot be shown "unless [appellant] can show that he was unduly prejudiced by virtue of such questions." *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim.App.1982); *see also Navajar v. State*, 496 S.W.2d 61, 64 (Tex.Crim.App.1973); *Ortega v. State*, 493 S.W.2d 828, 831 (Tex. Crim.App.1973). The adoption of rule 611(c) does not appear to have changed this long-standing proposition.

Appellant does not specifically point out any of the "numerous" leading-question violations allegedly committed by the State. We do note, however, that at the hearing on appellant's motion regarding the State's leading questions, the trial judge made it clear that he had been sustaining any objections to leading questions when appropriate, asking the State to rephrase its questions, or admonishing them not to lead. The trial judge further assured appellant that he would continue to do the same for any further violations if and when they arose.

Appellant cites no instances either at the hearing or on appeal wherein any particular questions prejudiced him or caused him irreparable harm. On appeal, he makes only a general accusation that the trial court's actions were insufficient. Appellant makes no showing that the trial court abused its discretion or that appellant was prejudiced in any way. **Therefore, we**

9. Now codified as Texas Rule of Evidence 611(c).

overrule appellant's seventh point of error.

■ In his eighth point of error, appellant complains that the trial court abused its discretion and committed reversible error by limiting the time for closing arguments to forty-five minutes per side. Appellant claims that this was an insufficient amount of time for him to argue the issue of intent, confront the State's evidence, and fully argue his defenses.

We hold that appellant has forfeited his right to complain on appeal. Evidence at the hearing on appellant's motion for new trial reveals that defense counsel used only thirty-eight of his forty-five minutes.[10] Counsel was not cut-off by the trial court, he did not request additional time, nor did he identify matters that he was unable to discuss with the jury. Therefore, appellant fails to establish why he required more than the time allotted. **Point of error eight is overruled.**

■ In point of error nine, appellant contends that the trial court erred by allowing two pictures of the victim's anus to be introduced into evidence. He claims these photos were irrelevant and more prejudicial than probative.

■ A photograph is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. CRIM. EVID. 401. The admission of photographs into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App. 1993).

The trial court was justified in finding the evidence relevant to material issues in the case. Evidence regarding the context of the crime and evidence of motive to show an intent to kill are certainly facts that are of consequence to the determination of the action. *See* point of error four, *supra.* State's exhibits 20 and 21 depict a portion of the deceased's body at the autopsy. These were relevant to show the sexual assault injuries that were sustained prior to the child's death and also to corroborate appellant's confession.

When determining whether the trial court erred in admitting the relevant photographs into evidence, our review is limited to determining whether the probative value of the photos is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *See Long v. State*, 823 S.W.2d 259, 271 (Tex.Crim.App.1991) (citing *Montgomery*, 810 S.W.2d at 389); *see also* TEX. R. CRIM. EVID. 403.

■ A court may consider many factors in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. *See Long*, 823 S.W.2d at 272. A court, however, should not be limited by this list. The availability of other means of proof and the circumstances unique to each individual case should also be considered. *See id.*

■ In reviewing the two autopsy photographs, we note that they were color, 4" by 6" in size, and showed some blood at the opening of the child's anus. Appellant complains only that the pictures were inflammatory and prejudicial because they specifically showed the child's anus and the injury represented an extraneous offense.

---

10. At the hearing, defense counsel conceded that he did not use his allotted time, stating, "I think I used about forty-four minutes." The record shows that defense counsel completed his argument before the time that the trial judge would normally warn counsel as to his time remaining.

We addressed the appropriateness of the sexual assault evidence in point of error four, *supra*. The photos were used at trial to show the wound and some bruising caused by the assault. The pictures are not particularly offensive, they were not enhanced in any way, and they portrayed no more than the gruesomeness of the injuries inflicted. *See Narvaiz v. State*, 840 S.W.2d at 429. After reviewing the photographs, we hold that the trial court did not abuse its discretion in admitting the exhibits. **Point of error nine is overruled.**

In appellant's tenth point of error, he complains that the trial court erred in failing to grant his motion for instructed verdict at the end of the guilt/innocence phase. He argues that the evidence was insufficient to prove his intent to kill the three-year-old victim because his confession shows that the killing was accidental.

The standard for judging the legal sufficiency of the evidence is whether, viewed in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim. App.1995). "The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony." *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim.App.1994). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury." *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). The jury may choose to believe some testimony and disbelieve other testimony. *See id.* If there is enough credible testimony to support appellant's conviction, the conviction will stand. *See id.*

In his statement, appellant confessed to smothering the child with a plastic bag shortly after sexually penetrating the child's anus. Appellant then called "9–1–1" and claimed that the child had drowned in the bathtub. Appellant kept up this charade until medical examiners realized that the child had not drowned and discovered that the child's anus was torn and bloody.

The only evidence pointing towards an accidental death is appellant's self-serving statements in his confession. A reasonable person could infer that appellant murdered the child and faked the drowning in an attempt to cover up the sexual assault. Therefore, we conclude that appellant's statements, the physical evidence, and the medical testimony support a clear and reasonable inference of intent whereby a rational jury could have found all the elements of the offense beyond a reasonable doubt. **Point of error ten is overruled.**

Finally, in point of error eleven, appellant combines each of his previous arguments to assert that the cumulative effect of the errors denied him the right to a fair trial. Having rejected each of appellant's arguments individually, we likewise reject the combination. **Point of error eleven is overruled.**

Finding no reversible error, we affirm the judgment of the trial court.