# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00445-CR

**Reginald Jerome Wooten, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 53,433, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Reginald Jerome Wooten of intentionally and knowingly causing injury to a child. *See* Tex. Pen. Code Ann. § 22.04(a) (West 2003). He appeals, contending that the trial court erred in admitting evidence of extraneous offenses and that he received ineffective assistance of counsel. We affirm the trial court's judgment.

In April 2002, K.W., appellant's three-year-old stepdaughter, was admitted to the hospital with severe burns to her buttocks, vaginal area, and heels. Appellant explained that he had allowed K.W. to draw her own bathwater, but failed to check the temperature of the water before placing her in the bathtub. He said he pulled K.W. out of the tub as soon as she cried out, but the

medical evidence showed that there were no splash marks and that K.W.'s hands and feet were not burned, as would be expected if she had tried to get out of the tub. Instead, the burns were classic immersion burns, which occur when a child is held in hot water, leading to a clear line of burns around the heels and whatever other part of the body touches the water. The doctors also found other recent injuries, such as bruising and scratches on K.W.'s back that appeared to be from a belt strap, small shallow burns, whip marks on her buttocks, and a bruise on her inner thigh.

In a pretrial hearing, the trial court considered appellant's objection to testimony by Victoria Williams, a foster parent who cared for K.W. for nine months. Outside the jury's presence, Williams testified that when she tried to wash or change dressings in K.W.'s vaginal area, K.W. said that her daddy had touched her there. K.W. also pantomimed to Williams that appellant put something in that area. Appellant objected to Williams's statements on grounds that they were not descriptive of the charged offense. The State countered that K.W.'s statements not to touch her "down there" were relevant to prove a long-standing pattern of child abuse and to show that this burning was not accidental. The trial court ruled that "at this time," it would not allow the testimony.

Williams testified before the jury that K.W. told her appellant had boiled water and "put" it on her and called appellant her "Burn Daddy." The State again urged that Williams should be allowed to testify as to the possible sexual abuse, stating that such evidence was necessary to rebut appellant's defense that the burning was an accident.[1] The trial court then allowed the

---

[1] At trial, the State also asserted that the allegations of possible sexual abuse were already before the jury as part of State's Exhibit 2, the Department of Protective and Regulatory Service's file on K.W. However, on appeal, the State admits that it could not find any such evidence in the exhibit, which is so large that it had to be divided up into three volumes, nor has our review of the

2

testimony, and Williams testified that when she tried to wash K.W.'s vagina, K.W. said, "Missy, don't touch me there" because her daddy touched her there. Williams also testified that during another bath, K.W. showed Williams "that her daddy had put something down there."

In his first issue, appellant contends that the trial court erred in allowing Williams's testimony as to K.W.'s "outcry" statements about possible sexual abuse because those statements described extraneous offenses.

Relevant evidence is presumed to be admissible. Tex. R. Evid. 402; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). If evidence of extraneous bad acts serves a permissible purpose such as establishing motive, opportunity, intent, preparation, knowledge, or absence of mistake, it has relevance beyond a tendency to prove the defendant acted in conformity with his character. *Montgomery*, 810 S.W.2d at 387; *see* Tex. R. Evid. 404(b). Such relevant evidence, however, may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Montgomery*, 810 S.W.2d at 389. A trial court has broad discretion to make such a determination, and we will not disturb a court's decision absent a clear abuse of discretion. *Montgomery*, 810 S.W.2d at 390; *see Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000). If the trial court's decision is within the zone of reasonable disagreement, we will uphold the decision. *Montgomery*, 810 S.W.2d at 391. A trial court should weigh probative value against a risk of unfair prejudice by considering such factors as: how compellingly does the evidence support an important fact; how strong is the evidence that the defendant actually committed

exhibit uncovered that those allegations were made part of the file.

3

the extraneous bad act; how likely is it that the evidence will impress the jury in an irrational and indelible way; how long will it take for the evidence to be developed, during which time the jury's focus will be distracted from the charged offense; and how great is the "need" for the evidence, that is, whether the proponent has other probative evidence that would establish the same fact. *Wyatt*, 23 S.W.3d at 26; *Montgomery*, 810 S.W.2d at 389-90.

At the pretrial conference, the State argued that if appellant claimed that K.W.'s burning was accidental, Williams's testimony should be allowed to show a pattern of physical and sexual abuse. The trial court said that appellant had not yet raised the issue of accident or mistake and no evidence had yet been presented and excluded Williams's testimony. Not until after an investigator for the Department of Protective and Regulatory Services had testified and appellant cross-examined Williams did the trial court reconsider and allow the testimony of possible sexual abuse. By that point, appellant had begun to raise the defense of accident, and the State urged that Williams's testimony was necessary to rebut that defense.

The State did not refer to Williams's testimony in closing arguments, nor did it take a significant amount of time to develop the evidence. *See Wyatt*, 23 S.W.3d at 26. The testimony, which was not later referred to or otherwise repeated, was not explicit and is not such that would indelibly impress the jury in an irrational way. *See id*. Williams did not testify that K.W. said appellant had sexually abused her. Her testimony can be interpreted to imply sexual contact, but it can also be interpreted as referring to appellant placing K.W. in hot water, severely burning her buttocks and vagina. K.W.'s statement, taken literally, supports the State's case of an intentional injury, a fact only demonstrated otherwise by the medical testimony. Furthermore, even if her

4

statement is interpreted as an allegation of sexual abuse, it arguably supports the State's assertion of motive or its contention that K.W. was subjected to a long-standing pattern of abuse, and thus, the trial court's decision to admit the testimony was not outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 389-90. The trial court did not abuse its discretion in allowing Williams's testimony. We overrule appellant's first issue on appeal.

In his second issue, appellant argues he received ineffective assistance of counsel, complaining largely of his attorney's failure to conduct extensive voir dire examination and the attorney's decision not to invoke rule 614 of the rules of evidence ("the Rule"), which requires the exclusion of witnesses from the courtroom during testimony. *See* Tex. R. Evid. 614.

To show ineffective assistance of counsel, a defendant must first show that counsel's performance fell below an objective standard of reasonableness, and second that the deficient performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). The defendant bears the burden of (1) overcoming a strong presumption that counsel's performance fell within the range of reasonable professional assistance and (2) bringing forth a record showing that counsel's performance was not based on sound trial strategy. *Thompson*, 9 S.W.3d at 813; *Blevins*, 18 S.W.3d at 271. When the record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a particular way. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). If there is no evidentiary hearing on the issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel was

5

ineffective. *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9 S.W.3d at 813); *see Mayhue*, 969 S.W.2d at 511. We evaluate trial counsel's effectiveness from his perspective at trial, not in hindsight, and we consider the representation in its totality, rather than focusing solely on isolated acts or omissions. *Mayhue*, 969 S.W.2d at 510.

The State conducted a lengthy voir dire, during which the prosecutor explained the trial process, burdens of proof, and the need for impartiality. The prosecutor asked questions of a few individual venire members, largely related to their jobs and backgrounds. Contrary to appellant's assertion that the State "comprehensively covered the State's theory of the case," other than saying that appellant faced a charge of felony injury to a child and asking the panel whether children deserved special protection by the law, the prosecutor did not discuss the details of the alleged offense. After the State concluded its voir dire, appellant's counsel addressed the panel, again reiterating the need for the jury to maintain an open mind and listen to the evidence objectively, even if the facts were unpleasant. Twice during appellant's counsel's voir dire, the State objected that counsel was getting into the facts of the case. Counsel then said, "[The prosecutor] is very thorough in his voir dire. And even those benches or cushions get rather hard. We've been at this an hour and a half. So I keep my voir dire short." Appellant's counsel asked the panel members to raise their hands if they had any issues they wished to address privately, and when no hands were raised, concluded his voir dire.

Shortly before trial began, appellant's counsel invoked the Rule, but said that appellant's family members wished to stay in the courtroom. He did not intend to call the family members as witnesses during the guilt/innocence phase, but said they might be called during

6

punishment. Defense counsel argued that the Rule should not exclude those family members during the guilt/innocence phase and that they should be allowed to testify at punishment, if necessary. The State objected that it might call them during its case in chief, even though it had not listed them on its witness list. The trial court ruled that if it were anticipated that the family members might testify at either stage of trial, the court would exclude the family under the Rule. Appellant's counsel conferred with appellant and his family and explained the functioning of the Rule and that the State's witnesses would be allowed to remain if the family members remained. Appellant told counsel that "he doesn't know what to do," but the family said that they wanted to remain in the courtroom. Counsel said, "[I]n light of that decision, the conversation and decision by the family, I withdraw my request that the witnesses be placed under the rule 614."

Appellant did not file a motion for new trial alleging ineffective assistance of counsel, and no hearing was held on the issue of ineffective assistance. The record is therefore silent as to counsel's strategies. We will not speculate as to counsel's reasoning. *See Mayhue*, 969 S.W.2d at 511.[2] Viewed as a whole, counsel's representation of appellant was more than adequate. Counsel vigorously questioned witnesses, frequently and appropriately objected to the prosecutor's questioning, and presented professional opening and closing arguments. Trial counsel's short voir dire of the jury panel followed the State's quite lengthy voir dire, during which the issues of burdens of proof, assumptions of innocence, and witness credibility were thoroughly explored. Counsel explained the functioning and consequences of the Rule, and acceded to the family's wishes to

---

[2] In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Blevins v. State*, 18 S.W.3d 266, 271-72 (Tex. App.—Austin 2000, no pet.). In such a case, a writ of habeas corpus is the more appropriate method of raising ineffective assistance claims. *Rylander*, 101 S.W.3d at 110.

remain in the courtroom. Appellant has not carried his burden of showing that his trial counsel's performance fell outside the range of reasonable professional assistance, was not based on sound trial strategy, or prejudiced his defense. *See Blevins*, 18 S.W.3d at 271. We overrule appellant's second issue and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: May 13, 2004

Do Not Publish