

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-0323-CR

_____

Boyd Dale Campbell, Jr., Appellant

v.

The State of Texas, Appellee

On Appeal from the 287th District Court
Parmer County, Texas
Trial Court No. 3272, Honorable Gordon H. Green, Presiding

April 3, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Boyd Dale Campbell, Jr. challenges his sentence after pleading guilty to the offense of unauthorized use of a motor vehicle. He contends that 1) the fingerprint expert who testified at the punishment hearing was not qualified to do so, and 2) the State failed to give timely and proper notice of its intent to use extraneous offenses and prior convictions during the punishment phase. We affirm the conviction.

*Issue 1 – Expert Witness*

The State sought to qualify Joe Bill Dempsey, the Happy Chief of Police, as a fingerprint expert. Dempsey had been in law enforcement since 1972 and an ID Tech since 1973. As an ID Tech, he gathered fingerprints from crime scenes and classified fingerprints on ten-print cards. He had "a couple hundred" hours of training in fingerprint comparisons in the 1970's and 1980's from the FBI, the Amarillo Police Department, DEA, and a technical school in Amarillo. He was also certified through TCLEOSE. He had been called to testify as an expert witness twice but never actually testified. Although he admitted having no fingerprint training in the last twenty-five years, he had worked as chief of police, an ID Tech, and trainer of other officers with the Tulia police department until 2006. When defense counsel asked Dempsey if he would agree that "there's been plenty of advancement in fingerprint technology," the witness answered, "I disagree wholeheartedly in that aspect of what I do. The loops, arches and whirls are still the same. They haven't changed. Never have, never will." Dempsey also informed the court that he had been trained in differentiating between good and bad fingerprints.

Appellant argues that the trial court erred in finding Dempsey an expert in the area of fingerprint comparison because he did not consider himself one and he had received no "training" (especially in the area of what "a good print versus a bad print" is for over twenty years. We overrule the issue.

The decision as to whether an expert is qualified to testify is left to the sound discretion of the trial court. *Sexton v. State,* 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Specialized knowledge may be derived from education, practical experience, a study of technical works, or a varying

2

combination of them. *Wyatt v. State,* 23 S.W.3d at 27. An expert may even give an opinion based solely on practical experience. *Carter v. State,* 5 S.W.3d 316, 319 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd).

As disclosed in the record, Dempsey was trained in the area of fingerprint examination, but had none within the last several decades. Nevertheless, during those several decades he trained others and conducted his own fingerprint investigations on a rather frequent basis for many, many years. His training also included training in the area of what constituted a good print versus bad print, though not recently. And, while the officer speculated that there may have been advancements in differentiating between good and bad prints, nothing of record suggests what those possible "updates" were and whether they somehow brought significant change to the area. The absence of the latter information is important given the witness' opinion that the basics of fingerprint examination in which he practices (loops, whirls, and arches) have not and will not change.

We further note that expertise may come from experience too, not simply through undergoing formal training. Indeed, "doing" as opposed to simply attending classes is itself highly educational. So, in view of the foregoing circumstances, we cannot say that the decision to find Dempsey an expert fell outside the zone of reasonable disagreement and evinced an instance of abused discretion. *See Rodriguez v. State,* No. 13-98-205-CR, 1999 Tex. App. LEXIS 7957, at *10-11 (Tex. App.–Corpus Christi October 21, 1999, no pet.) (not designated for publication) (finding the witness qualified when he had performed fingerprint identification for the last fifteen years and performed 75-100 identifications, his education consisted of a correspondence course in the

3

1960's and a four-hour course, and he had taught an advanced course in fingerprint examination).

Nor does Dempsey's refusal to label himself an "expert" change our decision. The question is one for the court to decide. It is quite conceivable that people may be experts in a particular realm or science due to their training or experience and not consider themselves such for whatever reason they choose. Again, the decision was for the trial court to make, and it did not err here.

*Notice of Extraneous Offenses and Prior Convictions*

Next, appellant complains of the State's failure to provide reasonable notice of its intent to proffer evidence of extraneous offenses and prior convictions during the trial's punishment phase. We overrule the issue.

Regarding the extraneous offenses, he complains of lacking notice of those described in a police report given him weeks before trial. That they were contained in the police report given him long before trial and constituted diversions he undertook upon stealing the vehicle and going on his multi-county joyride prevents us from concluding that appellant was in any way surprised by their use. So, we cannot say that he was harmed even if the trial court's decision was inaccurate. *Sharp v. State,* 210 S.W.3d 835, 839 (Tex. App.–Amarillo 2006, no pet.) (holding that purported error was harmless because the appellant did not illustrate surprise or the inability to develop a defense).

As for the prior convictions, appellant did not deny garnering notice of them via an amended motion to enhance punishment filed seven days before trial. He simply complains about the timeliness of that notice. Yet, the record illustrated that one of

those convictions was disclosed to appellant via the State's original motion to enhance filed approximately nineteen days before trial. And while appellant's counsel suggested that the seven-day notice of the others was not enough because he needed to investigate whether he was actually the subject of those convictions, he neither moved for a continuance, sought leave to obtain an expert to compare fingerprints on the pen-packets, nor explained why he could not make the requisite assessment within that seven-day period. It could also be said that counsel had ready access to the best source of information to begin his assessment, that source being his client. Yet, he never represented to the court that the convictions were of another party and time was needed to garner the tools to prove that. Given this, we cannot say that the amount of prior notice given him was unreasonable. *See Villescas v. State,* 189 S.W.3d 290, 294 (Tex. Crim. App. 2006) (stating that notice of the use of extraneous offenses for enhancement is timely when given at the beginning of sentencing if the defendant does not suggest a successful defense and request a continuance); *see also Pelache v. State,* 324 S.W.3d 568, 577 (Tex. Crim. App. 2010) (stating that a motion to enhance filed two days before the punishment phase gave sufficient notice and did not violate due process when the defendant did not request a continuance, appear surprised, or argue he was unprepared to defend against them).

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice


Do not publish.


5