

## NUMBER 13-18-00294-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### IN THE MATTER OF M.G., A JUVENILE

On appeal from the 130th District Court
of Matagorda County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez, and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

Appellant M.G.[1] appeals from the juvenile court's order waiving jurisdiction and transferring appellant to criminal district court.[2]   *See* TEX. FAM. CODE ANN. § 54.02 (West, Westlaw through 2017 1st C.S.).   By one issue, appellant argues that the juvenile

---

[1] In appeals involving juvenile court cases, the Texas Rules of Appellate Procedure require the use of an alias to refer to a minor.   TEX. R. APP. P. 9.8.

[2] Texas Family Code section 56.01 authorizes an appeal "from an order entered under . . . Section 54.02 respecting transfer of the child for prosecution as an adult[.]"   TEX. FAM. CODE ANN. § 56.01(c)(1)(A) (West, Westlaw through 2017 1st C.S.).

court's order constitutes an abuse of discretion.   We affirm.

## I.   BACKGROUND

The State filed a petition with the juvenile court seeking to transfer appellant to criminal district court to stand trial for the offenses of capital murder of Devin Davalos, aggravated robbery, and tampering with evidence.   *See* TEX. PENAL CODE ANN. §§ 19.03, 29.03, 37.09 (West, Westlaw through 2017 1st C.S.).   A hearing was conducted on the State's petition, at which the following evidence was adduced.

### A.   Investigation

After Davalos's mother reported him missing, law enforcement officers ascertained that Davalos was last seen with appellant at a convenience store.   David Chauvin, a Texas Ranger, testified that he was contacted by the Bay City Police Department in Matagorda County to assist in the investigation.   Ranger Chauvin provided the juvenile court with a summary of what he learned through the investigation, which included contact with several witnesses and the receipt of multiple witness statements.

According to Ranger Chauvin, appellant contacted co-defendants M.T. and Michael Trevino to coordinate the robbery and assault of Davalos.   Appellant planned for Trevino and M.T. to stage the encounter so that appellant appeared to be an additional victim.   On the night in question, Davalos visited a convenience store with appellant, before travelling to appellant's home in Davalos's vehicle.   When appellant and Davalos arrived at appellant's home, Trevino and M.T. forced Davalos out of the vehicle and into the trunk.   The three assailants then drove away in Davalos's vehicle.

Davalos was able to open the trunk while the vehicle was in motion, causing Trevino to stop the car. One or two of the co-defendants exited the vehicle, approached the trunk area, and shot Davalos at least two times. They then drove to a rural property in Brazoria County, which was used by Trevino's family for hunting. At that location, Davalos was shot at least seven more times. Next, they drove to the edge of the Brazos River, where they discarded Davalos's body into the water.

The party then drove back to Matagorda County, abandoned Davalos's car in a ditch, and set the car on fire. They walked to appellant's residence and secured another vehicle. Next, they drove to a nearby bank and attempted to use Davalos's debit card to retrieve money from an ATM.

## B. Statements

The juvenile court admitted an investigation report, which included the written statements of Trevino and appellant. In his initial statement, appellant minimized his culpability. However, appellant provided a subsequent statement describing his involvement in Davalos's death. Appellant explained that he was in a romantic relationship with Davalos. Appellant told his cousin Trevino that he wanted to scare Davalos because he was upset with him. Appellant planned for Trevino and M.T. to approach Davalos's vehicle and point a gun at him. On the night in question, appellant arrived with Davalos at his residence, at which time Trevino approached Davalos's vehicle and threatened him with a shotgun. Trevino and M.T. instructed Davalos to get into the trunk of the car. They then drove away in Davalos's vehicle.

At some point, Davalos was able to open the trunk. Trevino then exited the vehicle and shot Davalos two times. They continued driving to a deer lease. Once there, Trevino shot Davalos two more times. Next, appellant shot Davalos three times—twice in the face and once in the chest. Appellant recalled that Davalos was still breathing when he fired the shots. They then drove to the Brazos River, where they discarded Davalos's body. They later abandoned Davalos's vehicle and set it on fire.

Trevino provided two statements generally corroborating appellant's account. However, in his first statement, he claimed that M.T. was the first to shoot Davalos. In a later statement, Trevino claimed that appellant first shot Davalos. M.T. did not provide a statement.

## C. Autopsy

Erin Barnhart, M.D., the chief medical examiner for Galveston County, performed the autopsy. Dr. Barnhart stated that Davalos was shot at least nine times: twice in the upper left chest and seven times in the head and face. Dr. Barnhart concluded that none of the gunshot wounds occurred postmortem. She believed that the left cheek wound was the only wound that could have caused Davalos's immediate death. The other wounds would have resulted in blood loss and eventual death but would not have rendered Davalos unconscious.

## D. Evaluations

Michael Fuller, M.D., a psychiatrist, performed a court-ordered evaluation of appellant. Dr. Fuller testified that appellant possessed average maturity and reasonable sophistication for a sixteen-year-old. Dr. Fuller noted that appellant had previous encounters with law enforcement concerning marijuana possession and possession of a

prohibited weapon. Appellant reported to Dr. Fuller a history of using marijuana, alcohol, Xanax, and cocaine. In his report, Dr. Fuller concluded that appellant "is a reasonably intelligent and reasonably mature adolescent who could be certified for trial as an adult given his age and the serious nature of the behaviors that he is accused of."

Michael Ditsky, PhD, a psychologist, also conducted a court-ordered evaluation. Dr. Ditsky believed that appellant's "preponderance for dangerousness was at a low risk." Regarding treatment amenability, Dr. Ditsky explained that appellant was "very high percentile, 99." Dr. Ditsky stated that appellant was in the "middle range" for sophistication and maturity. He later clarified that appellant's sophistication and maturity was "below average" for a sixteen-year-old. Dr. Ditsky believed that appellant was not an independent decision-maker in the murder of Davalos but acted under pressure from Trevino. Dr. Ditsky stated that appellant could be rehabilitated with treatment. In his report, Dr. Ditsky concluded that appellant "does appear to meet the criteria for being retained in the Juvenile Justice System[.]"

Appellant's counsel provided Dr. Fuller and Dr. Ditsky with information regarding the Texas Juvenile Justice Department's capital offender program in the days preceding the hearing. When asked by appellant's counsel about the program, Dr. Fuller stated that it appeared to be a successful program and that it would be helpful for appellant to have access to the program. Similarly, Dr. Ditsky stated that appellant would probably benefit from the program. However, he had never worked with a juvenile involved with that specific program.

5

Leslie Penny, a Matagorda County juvenile probation officer, conducted a social evaluation and investigation. Penny interviewed appellant's mother, teacher, and principal. She also reviewed appellant's school records, letters of support, the offense reports, and the psychological evaluations. Based on her investigation, Penny concluded that appellant "should not remain in the juvenile justice system."

## E. Mother's Testimony

Appellant's mother V.G. testified that appellant attended school through eighth grade and received average grades. According to V.G., appellant recently received his GED. V.G. described appellant as a follower who was not "as mature as he should have been." V.G. described Trevino as a troubled child.

## F. Juvenile Court's Order

By written order, the juvenile court waived its jurisdiction and certified appellant to stand trial in criminal district court. The juvenile court supported its order with findings of fact and conclusions of law. This interlocutory appeal followed.[3]

## II. DISCUSSION

## A. Standard of Review and Applicable Law

A juvenile court has exclusive original jurisdiction over all proceedings involving the delinquent conduct of a person who was a child at the time they engaged in the

---

[3] As reasonably possible, courts of appeals must ensure that juvenile certification appeals are brought to final disposition within 180 days of the date the notice of appeal is filed. *See* TEX. FAM. CODE ANN. § 56.01(c), (h–1) (West, Westlaw through 2017 1st C.S.); *see also Order Accelerating Juvenile Certification Appeals and Requiring Juvenile Courts to Give Notice of the Right to an Immediate Appeal*, TEXAS SUPREME COURT, Misc. Docket No. 15–9156 (Tex. 2015), http://www.txcourts.gov/media/1055398/159156.pdf. However, this case was delayed by the extension of the appellate briefing deadlines. The notice of appeal was filed in the trial court on June 11, 2018. Appellant's counsel filed two motions seeking an extension of time to file an appellate brief, for which this Court granted partial relief. Appellate counsel filed his brief on October 19, 2018.

conduct. TEX. FAM. CODE ANN. § 51.04(a) (West, Westlaw through 2017 1st C.S.); *see id*. § 51.02(2)(A) (West, Westlaw through 2017 1st C.S.) (defining "child" as a person who is "ten years of age or older and under 17 years of age"). A juvenile court may waive its exclusive original jurisdiction and transfer a child to the criminal district court for criminal proceedings if the following is determined:

    (1)    the child is alleged to have violated a penal law of the grade of felony;

    (2)    the child was . . . 14 years of age or older at the time [of the alleged] offense, if the offense is a capital felony, an aggravated controlled substance felony, or a felony of the first degree[;] . . . and

    (3)    after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id*. § 54.02(a). Regarding the third requirement, the juvenile court must consider the following non-exclusive factors:

    (1)    whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

    (2)    the sophistication and maturity of the child;

    (3)    the record and previous history of the child; and

    (4)    the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id*. § 54.02(f). The State bears the burden to convince the juvenile court, by a preponderance of the evidence, that "the welfare of the community requires transfer of jurisdiction for criminal proceedings, either because of the seriousness of the offense or

the background of the child (or both)." *Moon v. State*, 451 S.W.3d 28, 40–41 (Tex. Crim. App. 2014). If the juvenile court waives its jurisdiction, then it must specifically state its reasons for doing so in a written order. TEX. FAM. CODE ANN. § 54.02(h).

In evaluating the juvenile court's decision to waive its jurisdiction, we first review the legal and factual sufficiency of the evidence to support the juvenile court's specific factual findings. *Moon*, 451 S.W.3d at 47, 50. We limit our review to those facts expressly relied upon by the juvenile court in its transfer order. *Id*. at 50. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the findings and disregard contrary evidence unless a reasonable factfinder could not reject it. *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014)). If there is more than a scintilla of evidence to support the finding, then the evidence is legally sufficient. *Id*. Under a factual sufficiency review, we consider all the evidence presented to determine if the juvenile court's finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id*.

We review for an abuse of discretion the juvenile court's conclusion that the welfare of the community requires criminal proceedings because of the seriousness of the alleged offense and/or the background of the juvenile. *Moon*, 451 S.W.3d at 47. Under this inquiry, we must decide whether the juvenile court's decision represents a reasonably principled application of the statutory factors, while bearing in mind that not every statutory factor must weigh in favor of transfer. *Id*.

8

**B. Analysis**

Appellant maintains that the juvenile court's transfer order was an abuse of discretion because: (1) the classification of the offense alone is not enough to support the juvenile court's decision; (2) appellant's role in the murder was unclear; and (3) Dr. Ditsky's report recommended that the child be retained. We construe appellant's arguments as challenging the sufficiency of the evidence regarding the juvenile court's specific findings and that it abused its discretion in weighing the section 54.02(f) factors.

**1. Sufficiency of the Trial Court's Findings**

**a. Offense Against Person or Property**

The juvenile court found that "the three charged persons kidnapped the victim, shot him, but did not cause his immediate death, transported him to another location, shot his [sic] further, then transported him to the Brazos River where they delivered the fatal gun shots and then dumped him into the Brazos River." The court found that appellant participated in "dump[ing] [Davalos's] body into the river" and burning his vehicle. The court further found that "[t]he crime was particularly gruesome and took place over an extended period of time." It noted that "the charged persons assembled and planned the crime and also a potential cover-up by dumping the body into the river and then burning the car." The court concluded that "the offense alleged here is so depraved and of such an egregious character that it may stand alone to justify transfer."

The juvenile court's findings are supported by the record. While there are some inconsistencies in the witness statements, appellant's involvement in the offense is clear. In appellant's written statement, he admits to his participation in the kidnapping and

murder, including shooting Davalos. Appellant's actions are further supported by Trevino's statement and Ranger Chauvin's summary of his investigation.

### b. Sophistication and Maturity

On this factor, the juvenile court considered both Dr. Fuller and Dr. Ditsky's testimony and reports, which it found were "well-reasoned and supported." The court cited Dr. Fuller's testimony that appellant was a well-developed sixteen-year-old with reasonable maturity and intelligence. The court further cited Dr. Ditsky's testimony that appellant was functioning within the borderline range of intellectual functioning. The juvenile court found that appellant "has below average raw intelligence and an average level of sophistication and maturity." The court concluded that this factor did not weigh for or against certification of appellant. We conclude that its neutral finding in this regard is supported by the record.

### c. Record and Previous History

The juvenile court concluded that this factor weighed slightly in favor of appellant, finding that appellant had previously been charged with possession of marijuana and possession of a prohibited weapon. Appellant does not take issue with the court's findings and conclusion.

### d. Protection of the Public/Likelihood of Rehabilitation

Regarding this factor, the juvenile court "applie[d] the general presumption against certification," finding that neither the State nor appellant "presented evidence fully describing the available or preferred juvenile programs as applied to [appellant's] particular situation." We agree that the evidence concerning available treatment

10

programs was lacking.   Appellant does not challenge the findings relating to this factor or the juvenile court's conclusion that this factor weighs in appellant's favor.

### e.      Summary

The juvenile court's factual findings do not conflict with the great weight and preponderance of the evidence so as to be so clearly wrong or unjust.   *See In re S.G.R.*, 496 S.W.3d at 239.   Furthermore, there exists more than a scintilla of evidence to supports its findings.   *See id.*   Accordingly, we conclude that the court's order is supported by factually and legally sufficient evidence.

### 2.      Weighing the Section 54.02(f) Factors

The juvenile court concluded that appellant "should be certified as an adult due to the 'sufficiently egregious character' of the alleged offense."   The court found that "the other factors, to the extent they weigh in favor of . . . retaining jurisdiction, do not weigh so heavily in that direction as to overcome the conclusion that the crime alleged is of such a sufficiently egregious character as to support waiver and certification."

In arguing that the juvenile court abused its discretion, appellant relies heavily on Dr. Ditsky's recommendation that appellant remain in the juvenile system.   However, given Dr. Fuller's recommendation to the contrary, we believe that the juvenile court properly exercised its factfinding role in reconciling conflicting testimony.   *See In re S.G.R.*, 496 S.W.3d at 239; *see also Wyatt v. State,* 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (explaining that reconciliation of the conflicts in the evidence is within the fact-finder's exclusive province).   Furthermore, we disagree with appellant's implicit argument that Dr. Ditsky's recommendation should usurp the trial court's statutory

11

authority to determine whether to waive its jurisdiction by weighing the appropriate factors.

Appellant also argues that the juvenile court abused its discretion because "[t]he murder alone is not enough" to justify the court's order. We agree with appellant's general proposition, but his argument mischaracterizes the juvenile court's order.

The mere category of offense the juvenile is alleged to have committed, without more, will not serve to justify transfer. *Moon*, 451 S.W.3d at 48. If the only consideration informing the juvenile court's decision to waive jurisdiction is the category of the crime alleged, rather than the specifics of the particular offense, then "the transfer decision would almost certainly be too ill-informed to constitute anything but an arbitrary decision." *Id*. However, "the offense that the juvenile is alleged to have committed, so long as it is substantiated by evidence at the transfer hearing and of a sufficiently egregious character, will justify the juvenile court's waiver of jurisdiction regardless of what the evidence may show with respect to the child's background and other Section 54.02(f) factors." *Id*.

Contrary to appellant's contention, the juvenile court did not limit its consideration to the classification of the offense. Rather, the court cited particular actions that it found to be depraved and egregious. "[T]he juvenile court that shows its work should rarely be reversed." *Id*. at 49. "As long as the appellate court can determine that the juvenile court's judgment was based upon facts that are supported by the record, it should refrain from interfering with that judgment absent a scenario in which the facts in the transfer order, based on evidence produced at the transfer hearing . . . bear no rational relation to

the specific reasons the order gives" to justify transfer.  *Id*. at 46.

The juvenile court considered each of the section 54.02(f) factors and provided specific findings in support of its decision to waive its jurisdiction.  Its findings are supported by factually and legally sufficient evidence.  In light of the juvenile court's findings and our review of the record, we conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring appellant for trial as an adult.  We overrule appellant's sole issue.

### III.    CONCLUSION

We affirm the juvenile court's order waiving jurisdiction and transferring appellant to criminal district court.

LETICIA HINOJOSA
Justice

Delivered and filed the
29th day of November, 2018.

13