MEMORANDUM OPINION

No. 04-05-00482-CR

Edward G. ROBINSON,

Appellant

v.

The STATE of Texas ,

Appellee

From the 379th Judicial District Court, Bexar County, Texas

Trial Court No. 2004-CR-0748

Honorable Olin B. Strauss , Judge Presiding


Opinion by: Phylis J. Speedlin , Justice

Sitting: Sarah B. Duncan, Justice

 Phylis J. Speedlin , Justice

 Rebecca Simmons, Justice

Delivered and Filed: March 15, 2006

AFFIRMED

 Edward G. Robinson was convicted by a jury of manslaughter and sentenced to sixteen years imprisonment. Because the
issues in this appeal involve the application of well-settled principles of law, we affirm the trial court's judgment in this
memorandum opinion.

1. In his first issue, Robinson asserts the evidence is factually insufficient to support his conviction for manslaughter as a
lesser included offense of the indicted offense of murder. Specifically, he argues the evidence is too weak to support the
jury's finding that he recklessly caused the death of the victim, i.e., that he was aware of but "consciously disregard[ed] a
substantial and unjustifiable risk" of death, and that such disregard was a gross deviation from the standard of care an
ordinary person would have exercised under the circumstances as viewed from Robinson's standpoint. See Tex. Pen. Code
Ann. §§ 6.03(c), 19.04(a) (Vernon 2003); see also Schroeder v. State, 123 S.W.3d 398, 400-01 (Tex. Crim. App. 2003). In
conducting a factual sufficiency review, we view "all the evidence in a neutral light, both for and against the finding, and set
aside the verdict if 'proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.'" Vodochodsky v. State, 158 S.W.3d 502,
510 (Tex. Crim. App. 2005). We consider all of the evidence weighed by the jury, comparing the evidence which tends to
prove the existence of the elemental fact in dispute with the evidence which tends to disprove it, but avoiding substitution
of our judgment for that of the fact finder. Id.

 Robinson concedes he was aware of the risk of death, but argues the evidence shows that instead of disregarding the risk,
he tried to protect the female victim by removing the rifle from her reach. He also asserts that none of the State's witnesses
testified that Robinson had consciously disregarded the risk to the victim. It is well settled, however, that a jury may draw
reasonable inferences from the evidence before it. Jones v. State, 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996). Here,
the evidence was undisputed that the rifle belonged to Robinson and he knew it was loaded; he had fired it once before;
Robinson, his two friends and the victim were all drinking beer that night; the rifle was brought outside to the back yard for
protection in case the victim's boyfriend, with whom she had argued, showed up, and because Robinson had been shot in a
drive-by shooting a few weeks before. There was contradictory evidence as to whether it was Robinson or the victim who
brought the rifle outside, and as to whether Robinson or only the other men took the safety off and cocked the rifle each
time a car passed by. In addition, Robinson's two written statements were admitted into evidence. In his first statement,
Robinson said the victim was trying to pull the rifle away from him and had her hands on the front of the rifle when it
discharged; in his second statement, he said he pointed the rifle at the victim to show her he was serious about not letting
her handle the rifle and it discharged.

 At trial, Robinson testified his first statement was "more accurate," and denied pointing the rifle at the victim or intending
to shoot her. He testified that he knew "what could happen" if a loaded gun was pointed in someone's face and knew "what
the end result could be;" and he was holding the rifle in his right hand with his finger "right before the trigger" when it
discharged. Fingerprints lifted from the trigger area were not able to be matched to Robinson or the victim. Finally, a
ballistics expert testified that the safety had to be manually taken off and the trigger had to be pulled for the rifle to
discharge; the trigger had a normal five pound pull, not a "hair trigger" pull; the rifle did not discharge in a drop test with
the safety off and in the cocked position; and it was possible the rifle could have accidentally discharged if the trigger was
hit inadvertently. The medical examiner testified the victim died from a mortal gunshot wound that entered her right eye
from approximately two feet away; the bullet traveled in a downward right-to-left trajectory and exited through the back of
her skull behind her left ear; the victim had no gunshot residue on her hands; some residue should have been present if her
hands were on the rifle at the time it discharged; and the forensic evidence was not inconsistent with an accidental
discharge. Another expert testified Robinson had gunshot residue on both his hands. Based on this evidence, the jury chose
to believe that Robinson did not intend to kill the victim, but found that he acted recklessly in causing her death. We can
not say, based on the record before us, that the evidence is factually insufficient to support Robinson's conviction for
manslaughter. His first issue is overruled.

2. Robinson asserts in his second issue that the trial court erred in denying his motion to suppress because his two written
statements were the product of illegal police coercion and were thus involuntary. See Jackson v. Denno, 378 U.S. 368, 380
(1964); see also Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000) (determination of the voluntariness of a
confession is based on an examination of the totality of the circumstances surrounding its acquisition). A statement is
involuntary if there was official, coercive conduct of such a nature that any statement obtained as a result is unlikely to be
the product of essentially free and unconstrained choice. Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). 
Because Robinson testified that his first statement was accurate, thereby waiving any error in its admission, we only review
the admissibility of his second statement. Owens v. State, 503 S.W.2d 271, 272 (Tex. Crim. App. 1974); Daugereau v.
State, 778 S.W.2d 577, 578 (Tex. App.--Corpus Christi 1989, no pet.). In reviewing the admissibility of an oral or written
statement, we apply a bifurcated standard of review, affording almost total deference to the trial court's determination of
historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses'
credibility and demeanor, but reviewing the court's application of the law to the facts de novo. Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Here, the trial
court made the following findings of fact and conclusions of law at the conclusion of the suppression hearing: (1) all
required statutory and constitutional warnings were given, understood and voluntarily waived by Robinson; (2) his
confession was freely and voluntarily made without compulsion or persuasion; and (3) his confession was admissible as a
matter of law and fact.

 We conclude the record supports the trial court's findings and its denial of the motion to suppress. It is undisputed that
Robinson was given his Miranda warnings, understood them, and voluntarily waived them prior to making his first
statement. He was permitted restroom breaks, given a drink, never asked to stop the interview and never asked for an
attorney. His first statement was begun at 8:22 a.m. and concluded about 11:00 a.m. As noted, Robinson's first statement
described the shooting as an accident, with him standing up holding the rifle and the victim sitting down pulling the rifle
toward her with her hands on the rifle when it discharged. Robinson's second statement also described the shooting as an
accident, but with him standing up pointing the rifle at the seated victim because he was upset that she kept trying to take
the rifle away to handle it herself; in this version, the victim's hands were not on the rifle when it fired. Robinson argues his
second statement was coerced because after he gave his first statement the police officers called him a liar and implied he
had tried to rape the victim. At the suppression hearing, Detective Titus, who monitored the first interview, testified that
after Robinson gave his first statement, she questioned him about inconsistencies between his statement and other evidence. 
She stated that Detective Handowski, who took Robinson's first statement, told Robinson that he "did not believe" parts of
his statement. While Detective Titus was alone in the interview room with Robinson, two other detectives entered and
requested that Robinson demonstrate how he had described the shooting in his first statement. They then explained to
Robinson that his demonstration did not correspond to the physical evidence, particularly the bullet trajectory of the entry
wound. Detective Titus testified she never left the room and no one yelled at Robinson, accused him of being a liar or of
trying to rape the victim. Robinson then made the second statement, which was completed at about 12:00 noon. Both
Detectives Handowski and Titus testified no coercion or inducement was used to obtain Robinson's two statements. Based
on the record, we uphold the trial court's finding that the second confession was not the product of police coercion, but was
voluntary and admissible. Robinson's second issue is overruled. 

 The trial court's judgment is affirmed.

 Phylis J. Speedlin , Justice





DO NOT PUBLISH