OPINION HEADING PER CUR 

















NO. 12-05-00243-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

 

WILLIAM
BUMGARNER,                                      §          APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                                §          JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                               §          SMITH
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION

            A jury convicted Appellant, William Bumgarner, of the
offense of intoxication manslaughter.  The
trial court found that Appellant twice had been convicted of a felony offense
and had used a deadly weapon in the commission of this offense.  The trial court assessed Appellant’s
punishment at confinement for life. 
Appellant presents two issues on appeal challenging the legal and
factual sufficiency of the evidence and the trial court’s admission of expert
testimony.  We affirm.

 

Background

            Appellant was the driver of a vehicle that crossed over
the center line of the roadway and collided head on with another vehicle.  The driver of the other vehicle died in the
collision.  The absence of any skid marks
on the pavement indicated that Appellant was apparently unaware that he crossed
out of his lane into the oncoming traffic. 
Appellant sustained a broken leg and wrist and cuts to his face.  He also suffered minor closed injuries to his
head.

            Appellant remained pinned in his car for forty-five
minutes after the accident.  According to
the paramedics who helped free him from his car, Appellant initially told them
that he was not hurt and to leave him alone. 
He laughed and talked in a way that showed he did not understand the
nature of his injuries. 








            Dr. John Berne, the trauma surgeon at East Texas Medical Center,
treated Appellant upon his arrival at the hospital.  The emergency personnel told Dr. Berne that
Appellant was drunk, and this, coupled with Appellant’s confusion and otherwise
strange behavior, led Dr. Berne to believe that Appellant was intoxicated.  At some point while he was with Dr. Berne,
Appellant lost consciousness.  Dr. Berne
acknowledged that Appellant’s head injuries could account for his altered
mental state.  Appellant refused to
voluntarily provide a blood sample.  A
sample of his blood was taken approximately one and one half hours after the
accident.  The preliminary analysis
disclosed no alcohol in the sample. 
After the initial test, the Department of Public Safety (DPS) mailed the
sample to the Austin DPS lab for further testing.

            The DPS lab did not test the sample for at least two
months after it was received.  The tests
discovered trace amounts of cocaine and 0.59 milligrams per liter of a cocaine
metabolite (benzoylecgone) in Appellant’s blood.  The DPS forensic toxicologist who made the
analysis explained that cocaine metabolite is produced when cocaine breaks down
in a person’s system and that cocaine in the blood sample would continue to
break down while it was in the test tube waiting to be tested.  The toxicologist estimated that, given the
level of cocaine metabolites found, Appellant would have had to have ingested “five
or six hits” of cocaine fairly close to the time of the accident.  The toxicologist further explained that any
amount of cocaine affects the use of one’s mental and physical faculties.  She testified “with absolute certainty” that
Appellant had more than a trace amount in his blood at the time of the
accident.

            A DPS drug recognition expert, Sergeant Jackson,
testified that he was qualified by training and experience to assess whether
Appellant was under the influence of cocaine when the fatal accident
occurred.  The trial court allowed
Sergeant Jackson to testify over Appellant’s objection.  Sergeant Jackson had not examined Appellant, but gave
his opinion based solely on an examination of Appellant’s file, which did not
contain some information ordinarily relied upon by experts in drug
recognition.  Sergeant Jackson explained
that any amount of cocaine in the user’s body is dangerous, because even a
small amount will cause the user to make “poor decisions driving down the
highway.”  It was Sergeant Jackson’s
opinion, based upon Appellant’s conduct, both at the scene and at the hospital,
and the laboratory reports showing the presence of cocaine metabolites, that
Appellant was impaired and under the influence of cocaine at the time of the
accident and that Appellant’s cocaine-induced impairment caused the wreck and
fatal injuries to the other driver.

            Appellant called Dr. Springfield, a supervising
toxicologist at the Tarrant County Medical Examiner’s office.  In Dr. Springfield’s opinion, the presence of
cocaine metabolites in Appellant’s blood sample tested months after the
accident did not constitute scientific proof that Appellant was under the
influence of cocaine when the wreck occurred. 
The cocaine, she believed, could easily have been ingested a sufficient
time in advance of the accident so that no cocaine remained in his system when
the accident occurred.  She believed that
Appellant was not under the influence of cocaine when the wreck happened.

 

Legal and Factual Sufficiency of the Evidence

            In his first issue, Appellant challenges the legal and
factual sufficiency of the evidence.

Standard of Review

            The standard for reviewing a legal sufficiency challenge
is whether, viewing the evidence in the light most favorable to the jury’s
verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S.
307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L.
Ed. 2d 560 (1979); see also Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993).  In Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004), the court of criminal
appeals explained the factual sufficiency standard.  

 

There
is only one question to be answered in a factual-sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt?  However, there are two ways in which the
evidence may be insufficient.  First,
when considered by itself, evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Second, there may be both evidence supporting
the verdict and contrary to the verdict. 
Weighing all evidence under this balancing scale, the contrary evidence
may be strong enough that the beyond-a-reasonable-doubt standard could not have
been met, so [that] the guilty verdict should not stand.  This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt
can “outweigh” the contrary proof and still be factually insufficient under a
beyond-a-reasonable-doubt standard.

 

Id. at
484-85.

            The jury determines the credibility of the witnesses and
it may “believe all, some, or none of the testimony.”  Chambers v. State, 805 S.W.2d
459, 461 (Tex. Crim. App. 1991).  It is
for the jury to accept or reject reasonably equal competing theories of the
case.  Goodman v. State, 66
S.W.3d 283, 287 (Tex.
Crim. App. 2001).  

Applicable Law

            A person commits the offense of intoxication manslaughter
if the person operates a motor vehicle in a public place while intoxicated and
by reason of that intoxication causes the death of another by accident or
mistake.  Tex. Pen. Code Ann. § 49.08(a) (Vernon 2003).  “Intoxicated” means not having the normal use
of mental or physical faculties by reason of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, a combination of two or more of
those substances, or any other substance into the body.  Id.
§ 49.01(2)(A).

Discussion

            Although acknowledging that the presence of cocaine
metabolites in his blood showed that he had taken cocaine sometime before the
accident, Appellant contends no person could say that cocaine, as opposed to
its waste products, was still present in his system and depriving him of the
normal use of his faculties at the time of the fatal collision.  The two head injuries, he argues, could
easily account for his strange behavior at the scene and in the emergency room.

            Trooper Mitchum, a trained accident reconstruction
specialist, testified that the accident was caused when Appellant crossed out
of his clearly marked lane across the centerline of the roadway and ran head on
into the victim’s vehicle.  There were no
skid marks from either vehicle until after the collision.  This, Trooper Mitchum said, indicated that
Appellant was unaware before the crash that he was driving into oncoming
traffic.  Appellant initially refused
medical attention at the scene and told the paramedics to leave him alone.  He laughed and seemed not to understand the
nature of his injuries, which were serious if not life threatening.  He was at times combative and refused to
voluntarily give a blood sample.  James
Ezell, a ten year veteran paramedic, said that the only time he had seen people
behave as Appellant acted was when they were “on something or taking something.”  Dr. Berne said that Appellant’s actions when
he saw him in the emergency room led him to believe Appellant was intoxicated.

            The tests on Appellant’s blood performed reasonably soon
after the accident disclosed no alcohol. 
The tests for cocaine performed months later could have found little
more than cocaine metabolites since the metabolic breakdown of cocaine into
cocaine metabolites continued in the test tube while the sample awaited
testing.  From the level of metabolites
present, Kathy Erwin, a DPS certified toxicologist, conservatively estimated
that Appellant took “five or six hits of cocaine.”  She testified that she was absolutely certain
that Appellant had more than a trace of cocaine in his system at the time of
the accident.  The jury heard a wealth of
evidence about the effects of even small amounts of cocaine and that any amount
affects one’s mental and physical faculties. 
Even if Sergeant Jackson’s conclusion that Appellant’s cocaine
intoxication caused the wreck is disregarded, there was an abundance of
evidence from which the jury could have reached the same conclusion unaided by
Sergeant Jackson’s opinion.

            Appellant consumed cocaine prior to driving, crossed into
oncoming traffic, made no effort to stop before the fatal collision, and
appeared disoriented and intoxicated to the paramedics and officers at the
scene and to the emergency room physician. 
The evidence was both legally and factually sufficient to support his
conviction.  Appellant’s first issue is
overruled.

 

Error in the Admission of Expert Testimony

            In his second issue, Appellant complains that the trial
court erred in allowing the State’s drug recognition expert to testify, over
objection, regarding Appellant’s intoxication even though the expert (Sergeant
Jackson) had performed none of the tests required in order to form his expert
opinion.

Standard of Review

            “The question of whether a witness offered as an expert
possesses the required qualifications rests largely in the trial court’s
discretion.”  Wyatt v. State,
23 S.W.3d 18, 27 (Tex.
Crim. App. 2000).  “Absent a clear abuse
of that discretion, the trial court’s decision to admit or exclude testimony
will not be disturbed.”  Id.  “The special knowledge which qualifies a
witness to give an expert opinion may be derived from specialized education,
practical experience, a study of technical 
works, or a varying combination of these things.”  Id.  Because the range of education, skill, and
training is so wide, a trial court has great discretion in determining whether
a witness possesses sufficient qualifications to assist the jury as an expert
on a specific topic in a particular case. 
See Joiner v. State, 825 S.W.2d 701, 708 (Tex.
Crim. App. 1992).  

Discussion

            During voir dire examination, Sergeant Jackson testified
that he had been a highway patrolman for eleven years, a trained drug
recognition expert (DRE) for six years, and an instructor in the program for
four years.  The basic seminar lasts two
weeks, followed by approximately three months of field studies.  The DRE program of the Texas Department of
Public Safety is administered by Sam
 Houston State
 University.  The participants receive intensive training
regarding how various drugs affect the human body and how to identify the drug
involved.  In a typical case, the DRE
interviews a subject for forty-five minutes and makes an evaluation based upon
the subject’s objective symptoms such as blood pressure, pupil dilation, and
the subject’s behavior.  The recognition
methods are based on scientific principles. 
A DRE must be re-certified every two years, and their evaluations are
subject to peer review.  Sergeant Jackson
acknowledged that he had not interviewed Appellant and had not observed the
symptoms that a DRE would typically rely on in a field interview.  In this case, he was testifying based on the
documents in the file including the blood test, as well as his knowledge of how
cocaine affected the human body. 
Sergeant Jackson
told the court that the knowledge and experience he had gained in face-to-face
interviews could be applied to subjects he had not observed firsthand.  

            At the close of voir dire Appellant objected to the
admission of Sergeant Jackson’s testimony based on Kelly v. State,[1] Daubert
v. Merrell Dow Pharmaceuticals, Inc.,[2] and Texas Rule of Evidence 702.  The trial court made extensive and detailed
findings that all the requisites to the admissibility of expert testimony had
been satisfied and overruled Appellant’s objection.  Midway through Sergeant Jackson’s testimony
before the jury, Appellant’s counsel reiterated his objection and was granted a
running objection by the trial court.  

            On appeal, Appellant specifically urges that Sergeant
Jackson’s testimony was not admissible because Sergeant Jackson had been
trained to conduct a forty-five minute interview with a suspect where he could
observe the suspect’s blood pressure, pulse, and pupil dilation in order to determine
what drug, if any, affected the person examined.  Since Sergeant Jackson did not interview
Appellant, the argument continues, he had done nothing his training and
experience required him to do in order to form an opinion as to Appellant’s
intoxication.  Therefore, he argues, the
trial court erred in admitting his testimony. 


            Sergeant Jackson had substantial training and experience,
not only in drug recognition from objective symptoms, but also in the mechanism
and effects of various drugs, including cocaine.  He acknowledged during his voir dire
examination that he had not interviewed Appellant, but that he was qualified to
give his opinion based on the tests and observations in Appellant’s file.  He said that he had testified as an expert in
numerous cases where he had not interviewed the defendant.  As he noted in his testimony before the jury,
it would have been impossible to conduct a face-to-face interview with a
subject trapped in a car with a broken femur and wrist.  In this case, he could rely on a test that
showed that Appellant had ingested a considerable amount of cocaine, and he had
the benefit of the observations of the paramedics, police officers, and the
emergency room physicians.

            The record reflects that Sergeant Jackson was qualified
as a DRE by his training and experience, the subject matter of his testimony
was an appropriate one for expert testimony, and his testimony would assist the
fact finder.  The trial court did not
abuse its discretion in admitting his testimony.  Appellant’s second issue is overruled.

 

Disposition

            The judgment is affirmed.

 

                                                                                                     BILL BASS    

                                                                                                            Justice

 

 

Opinion
delivered July 12, 2006.

Panel
consisted of Worthen, C.J., Griffith,
J., and Bass, Retired Justice, Twelfth
 Court of Appeals, Tyler
,
sitting by assignment.

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] 824
S.W.2d 568, 569 (Tex. Crim. App. 1992).





[2] 509
U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993).