Opinion issued July 31, 2008














     

In The
Court of Appeals
For The
First District of Texas




NOS. 01-06-00751-CR
           01-06-00752-CR
           01-06-00753-CR




THOMAS ROY KENNEDY, Appellant

v.

STATE OF TEXAS, Appellee




On Appeal from the 338th District Court 
Harris County, Texas
Trial Court Cause Nos. 1049873, 1049874, and 1060471




O P I N I O N

          Following a joint trial on three separate indictments, a jury found appellant,
Thomas Roy Kennedy, guilty of two offenses of intoxication manslaughter and one
offense of intoxication assault.


 The jury assessed punishment at 18 years’
confinement for each intoxication manslaughter offense and 10 years’ confinement
for the intoxication assault offense. The trial court granted the State’s motion to
cumulate the sentences.


 Appealing each judgment of conviction, appellant raises
two identical issues in each appeal in which he claims that the trial court erred by
admitting the testimony of the State’s two experts regarding retrograde extrapolation.
          We affirm each of the three judgments.
                                                        Background
          On the evening of December 9, 2005, 17-year old Daniel Graves drove his four
friends—14-year-old Laura Schierman, 12-year-old Janet Ruvalcaba, 14-year-old
Megan Lowry, and 12-year-old C.J. Duffey—to a concert in downtown Houston. The
group left the concert at around 11:00 p.m. Graves was driving his mother’s
Chevrolet Cavalier, Schierman was in the front passenger seat, and the other three
children—Ruvalcaba, Lowry, and Duffey—were in the back seat. As the group
neared the Monroe exit on Interstate 45, the car ran out of gas. Graves pulled the car
into the breakdown lane on the side of the freeway and turned on the car’s flashing
hazard lights. Graves called his father, who agreed to bring gas. As they waited for
Graves’s father, the five children sat in the car. 
          At that time, appellant was also driving on Interstate 45 in his pickup truck. 
Carter Ware, who was driving on the interstate with his family in their minivan, saw
appellant approaching from behind at a high rate of speed. Ware told his wife to
brace for impact. Appellant narrowly missed Ware’s van. Ware called 9-1-1 and told
the operator that appellant “almost hit six people,” was all over the road, and was
bouncing around the freeway like a “pinball.” Ware then saw appellant pull over on
the shoulder. Ware again called 9-1-1. 
          Other drivers also saw appellant driving erratically and observed him moving
quickly from lane to lane. Appellant was driving so aggressively that he forced other
drivers from the freeway onto the shoulder.
          Appellant was weaving in and out of traffic when he cut completely across the
freeway from lane four on the left side to the breakdown lane on the right side and
proceeded to accelerate. Seconds later, appellant crashed his truck into the rear of the
Graves’s car with the five children inside. No brake lights were seen on appellant’s
truck before he hit the car. Witnesses called 9-1-1 to report the accident at 12:11 a.m. 
As a result of the crash, Ruvalcaba and Lowry were killed instantly. Duffey suffered
a traumatic brain injury but survived. Graves and Schierman sustained non-life
threatening injuries, including broken bones.
          When the first emergency personnel arrived, appellant did not report any
injuries nor did he appear injured. Police officers found an empty Corona beer bottle
in appellant’s truck and noticed that appellant’s speech was slow and slurred. 
Appellant was placed in the back of a police patrol car while rescue crews worked to
help the injured children in Graves’s car. When a police officer went to check on
appellant in the patrol car, the officer found appellant asleep in the backseat. The
officer thought this unusual given the noise, flashing lights, and activity occurring at
the scene. The officer also noticed that the patrol car smelled of alcohol. 
          Officer C. Warren, with the Houston Police Department’s DWI Task Force,
was called to the scene. Once there, Officer Warren administered field sobriety tests
to appellant. Overall, appellant performed well on the “divided attention” tests such
as the walk and turn and one-leg stand tests. Appellant did receive one “clue” on the
one-leg stand test because he was swaying. Appellant, did not, however, perform
well on the horizontal gaze nystagmus test. Appellant received six out of six clues
on the horizontal gaze nystagmus test, indicating to Officer Warren that appellant was
intoxicated. 
          Appellant told Officer Warren that he was coming from a strip club that was
17 miles from the scene. Appellant admitted that he had drunk three to five Corona
beers that evening. He stated that he drank one beer before going to the club, which
was sometime after dark. Appellant told the officer that he had his last drink before
he left the club.
          Appellant was transported to the hospital to insure that he was not injured. At
the hospital, appellant’s blood was also drawn for blood alcohol testing at 2:25 a.m.,
which was two hours and fifteen minutes after the collision. The blood sample
showed that appellant’s blood alcohol content (“BAC”) was .0783 at the time the
blood was drawn.
          Appellant was charged with two offenses of intoxication manslaughter with
respect to the deaths of Ruvalcaba and Lowry and one offense of intoxication assault
with respect to Duffey. The principal issue at trial was whether appellant was
intoxicated at the time he ran his truck into Graves’s car. 
          With respect to showing intoxication, the State identified Terry Danielson and
Sebastian Fromhold as experts who would testify regarding appellant’s BAC at the
time of the collision by using the technique of retrograde extrapolation. Appellant
objected to Danielson’s and Fromhold’s testimony regarding retrograde extrapolation
on the basis that the experts’ testimony was not relevant or reliable. 
          The trial court conducted a Kelly gatekeeper hearing outside the presence of
the jury with regard to the admissibility of Danielson’s and Fromhold’s retrograde
extrapolation testimony.


 During the hearing, the trial court heard testimony from the
two experts and arguments from counsel regarding each expert’s qualifications and
regarding the science and technique of retrograde extrapolation generally. The trial
court ruled that Danielson and Fromhold were qualified to testify regarding
retrograde extrapolation. The trial court also found that the underlying scientific
theory and technique applied were valid and reliable. After making these specific
rulings, the trial court expressly stated that no testimony or argument had been
presented regarding whether either Danielson or Fromhold could properly apply
retrograde extrapolation with respect to the facts of this case specifically, i.e., the
third Kelly criteria. Accordingly, the trial court indicated that it had not ruled on
whether either expert could properly apply the technique in this case. 
          The trial court informed the defense that it would continue the gatekeeping
hearing outside the presence of the jury to determine whether the technique of
retrograde extrapolation could be properly applied in this case. The defense expressly
stated that it did not want to continue the gatekeeping hearing with respect to this
aspect of its challenge to the experts’ testimony. Instead, the defense indicated that
it wanted the experts to testify in front of the jury regarding the application of
retrograde extrapolation to the facts of this case and requested a “running objection”
to Danielson’s and Fromhold’s testimony in this regard. 
          Danielson and Fromhold testified at trial regarding retrograde extrapolation. 
In performing the retrograde extrapolation analysis before the jury, the only certain
information known to the experts relevant to determining appellant’s BAC at the time
of the collision was appellant’s height and weight, the type of drink (three to five
Corona beers), the time of the crash (12:10 a.m.), and the time of the blood test (2:25
a.m.). Because other relevant information was unknown, the State also told each
expert to accept certain assumptions in calculating appellant’s BAC at the time of the
collision. These assumptions pertained to the time period over which appellant
consumed the beer, when and what appellant had last eaten, the size of each beer
consumed, and appellant’s drinking habits (i.e., that he is a “social drinker”). Using
both the known and the assumed information in his retrograde extrapolation analysis,
Danielson calculated a BAC of between .11 and .12 at the time of the collision;
Fromhold calculated a range of .10 and .13. Though he had a “running objection,”
appellant never obtained a ruling on the third Kelly criteria of his challenge to
Danielson’s and Fromhold’s testimony; that is, appellant never obtained a ruling on
whether the experts properly applied the technique of retrograde extrapolation to
determine appellant’s BAC at the time of the collision. 
 
                                            Retrograde Extrapolation
          In two issues, appellant contends that the trial court erred by admitting the
testimony of Danielson and Fromhold regarding retrograde extrapolation. 
A.      Standard of Review and Kelly Principles
          We review the trial court’s decision to admit scientific evidence for an abuse
of discretion. Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). 
Applying this standard, an appellate court should not disturb the trial court’s decision
if the ruling was within the zone of reasonable disagreement. Hinojosa v. State, 4
S.W.3d 240, 250–251 (Tex. Crim. App. 1999) (citing Griffith v. State, 983 S.W.2d
282, 287 (Tex. Crim. App. 1998)).
          The proponent of scientific evidence must demonstrate to the trial court, by
clear and convincing evidence, that the evidence is reliable. Kelly v. State, 824
S.W.2d 568, 573 (Tex. Crim. App. 1992). To show reliability, the following three
criteria must be satisfied: (1) the underlying theory is valid; (2) the technique
applying said theory is valid; and (3) the technique was properly applied on the
occasion in question. Id. 
B.      The Underlying Theory
          As he did at the gatekeeping hearing, appellant attacks on appeal the theory of
retrograde extrapolation generally, contending that it is not a valid or reliable science. 
Appellant asserts that in Mata v. State, which is the seminal case on retrograde
extrapolation, the Court of Criminal Appeals did not “blanketly accept or take judicial
notice of the reliability of the science or technique [of retrograde extrapolation].” See
46 S.W.3d 902 (Tex. Crim. App. 2001). Since appellant filed his brief, the Court of
Criminal Appeals issued Bigon v. State in which the court commented, “We also
described [in Mata] the science behind retrograde extrapolation and recognized that,
though there is some disagreement in the scientific community, retrograde
extrapolation can be reliable when applied correctly.” 252 S.W.3d 360, 367 (Tex.
Crim. App. 2008). Such commentary leaves little doubt that, as a general proposition,
the Court of Criminal Appeals views retrograde extrapolation as a valid science under
the first Kelly criteria, if it is properly applied. Thus, the trial court did not abuse its
discretion by concluding that the underlying theory of retrograde extrapolation is
valid and reliable.
C.      Technique Applying Theory
          With respect to the second Kelly criteria, the defense also challenges the
technique utilized by Danielson and Fromhold to conduct a retrograde extrapolation
analysis. In Mata, the Court of Criminal Appeals concluded that “the science of
retrograde extrapolation can be reliable in a given case,” but the expert must be able
to “apply the science and explain it with clarity.” 46 S.W.3d at 916. In so doing, the
expert must demonstrate some understanding of the difficulties associated with
retrograde extrapolation, as well as an awareness of the subtleties of the science and
the risks inherent in any extrapolation. Id. Finally, he must be able to clearly and
consistently apply the science. Id.
          In this case, the record shows that Danielson and Fromhold demonstrated an
understanding of retrograde extrapolation and the methodologies underlying its
application. Danielson explained that retrograde extrapolation “[m]eans that
knowing, for example, a blood alcohol concentration at a given time and having some
knowledge of the individual, you can do a series of calculations and predict what the
concentration or the amount of alcohol was in the blood at some time in the recent
past.” At trial, Danielson defined retrograde extrapolation as 
a prediction of an alcohol level in blood sometime in the past based
upon a level that you have more recently measured. And it’s based upon
standard kinetic equations that have various parameters inserted into
them that you can then calculate backwards as to what the level of
alcohol is or was.

          At trial, Fromhold explained, 
Extrapolation refers to being able to relate a particular concentration
from one point in time to a time before or after. Retrograde
extrapolation implies we’re going back in time before we have a specific
value. Scientific principles that are involved that deal with the alcohol
absorption, distribution, and elimination. The very factors that come
into play to be able to make that type of estimate. 
See id. at 908–09 (defining retrograde extrapolation as “the computation back in time
of the blood-alcohol level–that is, the estimation of the level at the time of driving
based on a test result from some later time”). 
          Danielson and Fromhold identified the Widmark formula as the technique used
when conducting retrograde extrapolation. See id. at 909 (recognizing, “E.M.P.
Widmark first calculated absorption and elimination rates in the body, and his work
still represents the benchmark for other scientists’ studies today.”). The experts also
testified regarding the physical processes of alcohol absorption and alcohol
elimination. 
          Danielson and Fromhold each acknowledged that certain personal
characteristics, such as height, weight, gender, amount of alcohol consumed, duration
of alcohol consumption, time of blood test, and the subject’s food consumption are
factors to consider when conducting a retrograde extrapolation analysis. See id.
(explaining, “The length of time necessary for the alcohol to be absorbed depends on
a variety of factors, including the presence and type of food in the stomach, the
person’s gender, the person’s weight, the person’s age, the person’s mental state, the
drinking pattern, the type of beverage consumed, the amount consumed, and the time
period of alcohol consumption.”). Danielson and Fromhold each recognized the
importance of these factors when explaining his retrograde extrapolation analysis to
the jury. Although much of the information relevant to these factors was unknown
with respect to appellant, Danielson and Fromhold, nonetheless, conveyed to the jury
the significance of these factors in conducting a retrograde extrapolation analysis.
          The experts also demonstrated an understanding of the difficulties associated
with retrograde extrapolation, the risks inherent in conducting an extrapolation, and
the subtleties of the science. Danielson indicated that he was aware that the scientific
community was divided on certain aspects of retrograde extrapolation. Cf. id. at 915
(noting that expert “failed to acknowledge scientific evidence to the contrary”). 
Danielson acknowledged that alcohol absorption can be highly variable and that
retrograde extrapolation can be “a dubious practice if the proper information isn’t put
into it.” He also agreed that retrograde extrapolation “should be used with great
caution.” Danielson explained that, if the analyzer has “proper knowledge of the
characteristics of the subject,” then the retrograde extrapolation is “relatively
reliable,” but if the analyzer does not have the proper information, then there is a
chance for error. 
          Fromhold indicated that he was aware the scientific community was divided
on “the usefulness” of retrograde extrapolation. Fromhold explained that retrograde
extrapolation is not useful to obtain an exact value for blood alcohol content, rather,
it is useful to obtain an estimation or “to get an idea of what is possible.” 
          Appellant characterizes Danielson’s and Fromhold’s testimony as conflicting
because Danielson considered retrograde extrapolation to be “relatively reliable” if
sufficient information is known, while Fromhold indicated that retrograde
extrapolation cannot be used to obtain an exact value but to obtain an estimation. 
When read in context, we do not view such testimony as necessarily conflicting. 
Moreover, such testimony indicates that each expert was aware of the difficulties and
inherent risks of retrograde extrapolation. 
          Appellant also points to a number of instances at trial in which he asserts the
two experts disagreed and contradicted, not only one another, but also published
authority on certain aspects of retrograde extrapolation analysis. For example,
appellant contends that Danielson’s testimony regarding the effect of food on alcohol
absorption rates contradicts the literature cited in Mata. 
          We note, however, that the Mata court recognized that the scientific
community disagrees on a number of aspects of retrograde extrapolation analysis,
including the effect of food on absorption rates. See id. at 915–16 & 916 n.91. The
Mata court discounted the importance of an expert’s use of a set formula to conduct
an retrograde extrapolation analysis; rather the court indicated that a trial court should
focus on the expert’s ability to explain the science and its application with clarity. 
See id. at 915–16; see also Bigon, 252 S.W.3d at 368.
          Appellant also contends that each expert’s testimony is internally inconsistent. 
We note that the Mata court cited the inconsistency of the expert’s testimony in that
case as a reason to exclude the expert’s retrograde extrapolation testimony. See Mata,
46 S.W.3d at 917. 
          Here, appellant asserts that Fromhold’s testimony regarding the effect of food
on the alcohol absorption rate was inconsistent at trial. Fromhold testified that “[t]he
presence of food in the stomach delays the absorption of the alcohol.” He explained
that if food is present in the stomach, a one to two hour delay in reaching the
maximum alcohol concentration is expected. Relating to the facts of this case,
Fromhold testified, “If a major meal was consumed closer to midnight, then that could
potentially delay the absorption of any alcohol present.” Appellant contends that
such testimony is not consistent with Fromhold’s later testimony that, under the
various hypothetical situations posed by the State, appellant’s BAC at the time of the
collision was always higher than .08. However, on examination by defense counsel,
Fromhold clarified that all of the State’s hypothetical scenarios involved an
assumption that appellant had not eaten. When questioned about the effect of a “full
stomach,” Fromhold testified that appellant would still have had a BAC of .08 at the
time of the collision because, over the two-hour period between the collision and the
blood test, “there would be a lot more elimination than the one drink would
contribute.” Fromhold explained that food delays absorption, but, over a two-hour
period, elimination of the alcohol would also continue. In short, Fromhold opined
that the elimination rate over a two-hour time period would exceed the absorption rate
of any alcohol from appellant’s last drink, even if the absorption was delayed by the
presence of food. 
          Because Fromhold offered an explanation to reconcile his testimony, this case
differs from Mata. There, unlike here, the expert did not explain, acknowledge, or
reconcile the inconsistencies in his testimony. See id. at 914, 915. 
          Appellant further contends that Danielson contradicted himself with respect to
the importance of knowing the time period over which a subject had been drinking. 
We disagree. In citing specific instances of Danielson’s testimony, appellant has
taken the cited testimony out of context. When the entirety of his testimony is
reviewed, Danielson made clear that timing of the drinking is a factor to be
considered in conducting a retrograde extrapolation analysis. 
          Appellant also contends that Fromhold testified inconsistently regarding the
“impact of possible drinking patterns” on the results of the retrograde extrapolation
analysis. Like Danielson’s testimony, when it is read in context, Fromhold’s
testimony is neither inconsistent nor self-contradictory. 
          Fromhold agreed that “front-loading” or “back-loading” alcohol consumption,
i.e., binge drinking in a short period of time, could affect the results of the analysis. 
Appellant claims that Fromhold contradicted this testimony by later testifying that
front-loading or back-loading would not affect the results. When read in context,
Fromhold was indicating that drinking four or five beers in a short period of time
would not affect his opinion (i.e., “the results”) that appellant’s BAC was .08 or
greater at the time of the collision if it was assumed that all of the drinks were
consumed by 11:45 p.m. Fromhold testified that, under that scenario and assuming
an empty stomach, all of the alcohol from the drinks would have been absorbed by
the time of the collision at 12:10 a.m.
          After reviewing the record, we hold that it was within the trial court’s
discretion to conclude that the underlying technique advanced by Fromhold and
Danielson was valid and reliable.
D.      Application of Retrograde Extrapolation 
          With regard to the third Kelly criteria, appellant contends on appeal that
Danielson and Fromhold did not properly apply the retrograde extrapolation
technique, thereby rendering the experts’ opinions unreliable and inadmissible. 
Appellant points out that the experts made assumptions regarding information that
was critical to conducting a proper retrograde extrapolation, particularly in a case
such as this in which there is a significant time period between the collision and the
blood sampling. More specifically, the experts lacked information and made
assumptions regarding the time appellant began drinking and when and what
appellant had last eaten.
          As mentioned, the trial court made the record clear at the gatekeeping hearing
that it was not ruling on the admissibility of the experts’ retrograde extrapolation
testimony under the third Kelly criteria; that is, the trial court made clear that it had
not ruled on the admissibility of Danielson’s and Fromhold’s testimony in relation to 
whether the experts properly applied the technique of retrograde extrapolation under
the facts of this case. Equally as clear from the record is that the trial court offered
to hear the experts’ testimony in this regard outside the presence of the jury and to
make a ruling on the third Kelly criteria. The record shows that the defense declined
this offer and chose to forego a ruling on this part of the Kelly analysis at the
gatekeeping hearing. Instead, despite the lack of a ruling on the third criteria, the
defense chose to have a “running objection” and to have the experts testify regarding
the application of retrograde extrapolation in front of the jury. The record further
shows that, after each expert testified on direct examination regarding his retrograde
extrapolation analysis and conclusions, the defense cross-examined each expert and
never obtained a ruling from the trial court regarding its challenge that the experts
could not properly apply retrograde extrapolation to the facts of this case. 
          To preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds for the
desired ruling if they are not apparent from the context of the request, objection, or
motion. Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim.
App. 1998). Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have objected
to the trial court’s refusal to rule. Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138
S.W.3d 334, 341 (Tex. Crim. App. 2004). Simply stated, to preserve error, an
objection must be timely, specific, and pursued to an adverse ruling. Martinez v.
State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). 
          Here, though appellant had a “running objection” to the experts’ testimony
regarding proper application of retrograde extrapolation, appellant never pursued this
objection to an adverse ruling. Appellant was given the opportunity to have this part
of the Kelly analysis conducted outside the presence of the jury, but instead chose to
have the testimony presented in front of the jury and then did not obtain a ruling to
this part of his challenge. Accordingly, appellant waived his complaint that the trial
court abused its discretion by admitting Danielson’s and Fromhold’s retrograde
extrapolation testimony because the technique was not properly applied in this case. 
See Tex. R. App. P. 33.1(a)(2).
E.      Expert Qualifications
          Appellant further contends that the trial court erred by admitting Danielson’s
and Fromhold’s testimony because neither was qualified to testify regarding the
technique of retrograde extrapolation. On appeal, appellant assails the qualifications
of Danielson and Fromhold on the basis that neither has the appropriate education nor
practical experience to testify regarding retrograde extrapolation. Appellant also
points out that, on cross-examination, Danielson and Fromhold demonstrated an
unfamiliarity with many of the “well-known published researchers in the field” and
with “many preeminent experts in the field.” 
          The question of whether a witness offered as an expert possesses the required
qualifications rests largely in the trial court’s discretion. Wyatt v. State, 23 S.W.3d
18, 27 (Tex. Crim. App. 2000). The special knowledge that qualifies a witness to
give an expert opinion may be derived from specialized education, practical
experience, a study of technical works, or a varying combination of these things. Id.
          At the gatekeeping hearing, Danielson testified that he had a doctorate in
pharmacy and had been employed by the Harris County Medical Examiner’s Office
as a supervising toxicologist for the past five years. He testified that part of his job
duties included blood testing. According to Danielson, in addition to being
knowledgeable in the fields of serology and chemistry generally, he was also
knowledgeable about retrograde extrapolation. Danielson explained that he obtained
this knowledge form reading articles on retrograde extrapolation and also from his
practical experience. He explained that in past positions he had been involved in
“pharmacal kinetic analysis,” which involves the same “basic principles” as
retrograde extrapolation. Danielson also testified that he had previously testified as
an expert in 10 to 15 other cases regarding retrograde extrapolation. 
          Fromhold testified that he was a forensic chemist with the Pasadena Police
Department’s Crime Lab, had a degree in chemistry from the University of Texas, and
had previously worked as a technical supervisor in the areas of blood and breath
alcohol testing for Harris County and the Houston Police Department. In addition to
his chemistry degree, Fromhold has attended courses involving physiology and
toxicology of alcohol and regarding “alcohol impaired driving.” He also testified
that, since 1984, he has read articles and “kept up-to-date” on the field of forensic
toxicology and retrograde extrapolation. According to Fromhold, over the last 22
years he has testified as an expert performing retrograde extrapolation with respect
to breath alcohol analysis “hundreds of times” and has also performed retrograde
extrapolation as an expert with respect to blood alcohol testing. 
          Based on the foregoing, we hold that it was within the trial court’s discretion
to conclude that Danielson and Fromhold were qualified to testify regarding
retrograde extrapolation. See Bhakta v. State, 124 S.W.3d 738, 741 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d) (reviewing and affirming trial court’s
determination that expert was qualified to offer retrograde extrapolation analysis
testimony).
          We overrule appellant’s first and second issues in each of the three appeals.
                                                         Conclusion
          We affirm the three judgments of the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.

Publish. See Tex. R. App. P. 47.2(b).