**Opinion issued March 10, 2016**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-14-00875-CR

————————————

**NOE JOSE CERVANTES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1388906**

---

### MEMORANDUM OPINION

Noe Cervantes was convicted of aggravated sexual assault of his 11-year old sister-in-law.[1] In a single issue, he contends that insufficient evidence exists to support his conviction. We affirm.

---

[1]    Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2015).

**Background**

Cervantes and his wife married young and were living with her mother and her younger siblings, who were between the ages of four and 16. One of the siblings is an 11-year old girl named Leslie.[2] When Cervantes's mother-in-law worked, he and his wife would babysit the younger children, including Leslie. At one point, Cervantes had an argument with his mother-in-law and became so aggressive that she called the police to intervene. Cervantes was arrested and, from that point forward, stopped living in the home.

A few days after the confrontation, Leslie's mother found a letter addressed to "babe" in Leslie's room. She recognized the writing as Cervantes's. According to Leslie's mother, the letter "seemed inappropriate to be coming from a grown man to a child." Leslie's mother showed the letter to Leslie's sister (Cervantes's wife), who threw it away. A few days later, Leslie's mother found a second letter from Cervantes in Leslie's dresser, which the mother kept. It read, in its entirety, as follows:[3]

> I missed you babe
> I slept with your
> plow. I hope you
> had fun and missed
> me, but I think that

---

[2] To protect her privacy and for ease of reading, we use a pseudonym in discussing the complainant.

[3] The text of the letter is written verbatim, without corrections.

you didn't miss me
at all, which sicks,
my heart hurts when
we are not together.
You know I will do
anything for you. You
know I wouldn't lie
so I think we should be
open & [illegible, struck through words]
we shouldn't hide
anything from each
other. Most people don't
like different age being
with each other. I think
that if the two love each
other and know what
love means. Please
talk and be more
open with me.
When we can't talk
write, read everything
remember what you
read and answer back
ask questions.
Read, Reply,
Throw Away note.

After discovering this second letter, Leslie's mother confronted Leslie and "asked her did they have sex." Leslie "put her head down and cried." Leslie's mother asked her, "Where did he put his penis?" She testified that Leslie "said in her butt." Leslie said it happened while the mother was out of town and the siblings were in other rooms "playing video games" and "watching TV." Leslie told her mother that she did not disclose what had occurred because she was afraid of Cervantes.

Leslie's mother notified the police and took Leslie to Texas Children's Hospital for an examination. The doctor did not find evidence of physical injury; however, he testified that it is "very uncommon to see . . . much trauma" in the anal-genital area because "that area actually heals very . . . quickly" and there is often a delay in reporting a sexual assault. The doctor testified that Leslie reported "threats" regarding the abuse, but the doctor could not recall, while testifying, exactly what Leslie had said.

A forensic interviewer at the Children's Assessment Center testified about her interview of Leslie. The interviewer said that Leslie was "very consistent" and "very descriptive" in disclosing the alleged sexual abuse. Leslie described with specificity "exactly what she was wearing, the room that the incident happened [in], how she was forced to the room, her body position, the defendant's body position, how the defendant was moving, what her body could feel, what the defendant told her before it ended, and how he had stopped." Leslie told her that Cervantes touched "just [her] butt" and put his "private part . . . inside the hole where the poop comes out."

At some points during the interview, Leslie wrote what had occurred instead of discussing it verbally. She wrote as follows: "After he slammed me on the bed he raped me. First he put a towel around my mouth so I couldn't scream or talk, then he pulled down my pants and put his private part in my butt."

The State also proffered an audio file of Cervantes's police interview in which he admitted to having sexual thoughts about the eleven-year-old Leslie. He said he feels "guilty" that he "touched her in mind." He also disclosed that both of them had seen each other naked "by accident" and that he was considering the possibility that he might "pursue" her once she became "legal."

Leslie's mother described the impact that the sexual assault allegations had on Leslie's relationship with her sister (Cervantes's wife). The two would avoid each other at first. But, over time, Leslie's sister began to talk to her "often" about her allegations. Leslie's mother felt that the sister's conduct was not appropriate. This led Leslie's mother to feel that she needed to protect Leslie from her sister.

Eventually, Leslie recanted her allegations. She wrote a letter that read: "It did not happen and I am afraid of my sister and what she would do if I say it did happen." Leslie's mother took her to the district attorney's office to deliver the letter. While there, and without her mother present, Leslie told the prosecutor that she was scared of her sister and wanted the prosecutor to talk to her mother about the sister threatening her. Leslie explained that her sister made her write the letter.

There was evidence that Cervantes was communicating with Leslie's sister and mother around this time. A second audiotape was admitted into evidence of a phone call between Cervantes and his mother-in-law, in which he explained that Leslie's letter would not be enough for the judge and she, instead, needed to give a

sworn affidavit. He also told his mother-in–law to bring Leslie along because it would help him to get released sooner.

Leslie wrote two more letters recanting her original allegations. The first one said, "I have lied. I am sorry. I shouldn't have lied. I should have told the truth. I'm sorry." The second read, "Noe did not rape me. I lied because I was mad when he got into a fight with my mom and broke her phone."

At Cervantes's trial, Leslie testified that her initial allegations were not true and that Cervantes did not assault her. But her trial testimony was not consistent. Between her denials, Leslie agreed that Cervantes began showing her "special attention" at age 11. She testified that he had kissed her before, come to her bedroom window at night to talk to her, shown her pornography, and made her feel "uncomfortable" when he touched her. She also testified that the therapy sessions she attended for a brief time after her initial allegations helped her deal with the feelings she was experiencing at the time, which she described as feelings of "powerlessness," "embarrassment," "mood swings," "confusion about sex," and "re-triggering . . . what happened." She testified that it was difficult to express those feelings in her home. She also admitted that she earlier said that she was scared for her little sister if Cervantes ever returned to their home. Further, even after recanting, Leslie agreed that she continued to maintain that the assault

6

occurred when she was speaking alone "with people who . . . were fighting to protect" her.

The State presented evidence to establish that Leslie's original allegations—not the recantation—were true. A clinical psychologist who works with child sexual-abuse victims testified that "sometimes kids can recant true allegations of child sexual abuse." The causes of false recanting include a lack of support from those around them, negative reactions by family members, pressure by family members to deny the disclosure, loss of relationships as a result of the disclosure, and an effort, by the child, to save the relationships that have deteriorated due to the disclosure. In an attempt to show that this was why Leslie recanted, the State established that Leslie believed that she and her mother had become "closer" and that she was receiving more support from those around her since recanting.

Some of the mother's testimony also raised the possibility that Leslie had been forced to recant. She stated that Leslie wrote the first letter "because of" her older sister and, as a result, the mother became concerned that Leslie had been forced to recant her allegations. The mother testified that she thought the sister's influence was inappropriate and she needed to "protect" Leslie in that relationship. Ultimately though, and despite these influences on Leslie, Leslie's mother testified that she believed the sexual assault allegations were false.

The jury found Cervantes guilty of aggravated sexual assault of a child. The trial court sentenced him to 15 years' confinement.

## Sufficiency of the Evidence

Cervantes argues that the evidence was legally insufficient because the "only evidence supporting the conviction are uncorroborated out of court statements made by the complaining witness" who has since recanted.

### A.     Standard of review

We review a challenge to the sufficiency of the evidence under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010). Under the *Jackson* standard, insufficient evidence exists to support a conviction if, considering all of the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere

"modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *Laster*, 275 S.W.3d at 517–18; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd). And they may choose to believe or disbelieve any part of any witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "Likewise, 'reconciliation of conflicts in the evidence is within the exclusive province of the jury.'" *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. If the evidence is insufficient under this standard, an appellate court must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

## B.     The evidence is sufficient

To prove aggravated sexual assault of a child, the State must establish beyond a reasonable doubt that the defendant intentionally or knowingly "cause[d] the penetration of the anus or sexual organ of a child by any means." TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2015).

The testimony of the victim or an outcry witness—"the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense"—is sufficient, by itself, to support a conviction. *See Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("Outcry testimony alone can be legally sufficient evidence to support a conviction."); *see Tienda v. State*, No. 11-11-00283-CR, 2015 WL 2375256, at *5 (Tex. App.—Eastland May 14, 2015, no pet.) (stating that "a complainant's testimony alone is sufficient to support a conviction for the offense of indecency with a child"); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072, sec. 2(a)(3) (West Supp. 2015). "There is no requirement that outcry testimony admitted as substantive evidence be corroborated or substantiated by the victim or independent evidence." *Eubanks*, 326 S.W.3d at 241.

A victim's recantation of sexual-assault allegations does not destroy the probative value of her outcry statements. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("[A] criminal conviction,

10

which requires proof beyond a reasonable doubt, may rest on hearsay despite . . . the complainant's recantation."); *see Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that assertions made in outcry statements were probative even when contrary evidence existed). "Just because the complaining witness recants incriminating testimony does not mean the evidence is insufficient." *Maldonado v. State*, 887 S.W.2d 508, 509 (Tex. App.—San Antonio 1994, no pet.). It is within the jury's province to weigh the contradictory evidence, disbelieve the recantation, and believe, instead, the complainant's original allegations and description of the assault. *See Wyatt*, 23 S.W.3d at 30.

Looking at all of the record evidence in the light most favorable to the verdict, a rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89. Three witnesses—Leslie's mother (the outcry witness), the Texas Children's Hospital treating physician, and the Children's Assessment Center interviewer—testified to Leslie's original allegations against Cervantes. Additionally, the State proffered Leslie's handwritten notes describing the sexual assault as well as Cervantes's earlier letter to Leslie describing his affection for her and asking her to throw away the letter once read. Furthermore, Cervantes admitted an attraction to Leslie in his police interview as well as an aspiration of a romantic relationship with her.

The State also provided expert testimony from a clinical psychologist, who explained that a child may recant a true allegation of sexual abuse because of the lack of support at home or a desire to "make things back the way they used to be." This testimony dove-tails with Leslie's statements that her relationships had deteriorated following her accusations and had improved once she recanted.

Although Leslie recanted her earlier accusations and her mother expressed a belief that the accusations were false, the jury could have reasonably concluded that the recantation was falsely made due to pressures at home or in an effort to normalize her relationship with her family.

We conclude that sufficient evidence exists to support Cervantes's conviction and overrule Cervantes's sole issue.

## Conclusion

We affirm.

Harvey Brown
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

12